In the Matter of Al A. SHACKET,
Debtor.

Harold S. JAFFA and Irving
Taran, Plaintiffs,

v.

Al A. SHACKET, Defendant.

In the Matter of Leroy HELFMAN,
Debtor.

Harold S. JAFFA and Irving
Taran, Plaintiffs,

v.

Leroy HELFMAN, Defendant.

Bankruptcy Nos. 82–03732–W,
82–02789–W.
Adv. Nos. 82–1709–W, 82–1710–W.

United States Bankruptcy Court,
E.D. Michigan, S.D.

Jan. 28, 1983.

Nancy L. Kahn, Southfield, Mich., for plaintiffs.

Irving A. August, Birmingham, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

GEORGE E. WOODS, Bankruptcy Judge.

This matter is before the Court on the motions of plaintiffs for summary judgment in the above entitled proceedings.

The facts of the case, as previously litigated in state court, revolve around a real estate development scheme.[1] On November 8, 1967, defendants, Al Shacket and Leroy Helfman, and James Hartrick entered into an agreement for the development of land in an area of Meridian Township. Pursuant to the agreement, Shacket and Helfman were to enter into purchase agreements for property within a specified area of the township. Hartrick was to provide the purchase price; Shacket and Helfman were to incur the costs of development. Where Shacket and Helfman executed purchase agreements, they were required to assign them to Hartrick or his designee upon his request. Hartrick was required to sell the property he received under the agreement to Shacket and Helfman, unless they agreed otherwise. The established sale price from Hartrick to Shacket and Helfman was $3,800.00 per acre. Hartrick was also required to reimburse Shacket and Helfman for their development costs, in the event that a resale of the property rendered a minimum profit of $1,000.00 per acre.

From 1967 through 1969, Shacket and Helfman acquired options to purchase three real estate parcels, totaling 145 acres. The options on the parcels were assigned to Hartrick, through his corporation Hulett, Inc., for $1.00 each.[2] The total purchase price was $260,500.00.

On September 16, 1969, Shacket, Helfman, and plaintiffs, Jaffa and Taran, signed a partnership agreement, establishing Stay Company. The purpose of the partnership was to develop a mobile home park on the Meridian Township property encompassed by the November 8, 1967 agreement of Shacket and Helfman with Hartrick. Under the September 16, 1969 agreement, Shacket and Helfman were to contribute $12,500.00 each to the partnership and to transfer the land to the partnership "at their cost". Jaffa and Taran were to each contribute $25,500.00 in cash to the partnership and to loan the partnership $155,000.00.

Jaffa and Taran were not informed of the 1967 agreement of Shacket and Helfman with Hartrick.[3] Hartrick was aware of the 1969 agreement establishing Stay Company. Further, Hartrick was informed by Shacket and Helfman that a disclosure of the 1967 agreement had been made to Jaffa and Taran.

On July 15, 1969, Shacket and Helfman, acting pursuant to the 1967 agreement, offered to purchase the 145 acre parcel for $525,000.00. On September 16, 1969, Shacket and Helfman assigned their interest in the purchase agreement with Hulett, Inc., to Stay Company; on October 7, 1969, a land contract for the 145 acre parcel was executed.

On July 25, 1975, plaintiffs, Jaffa and Taran, brought suit against Shacket, Helfman, Hartrick and Hulett, Inc., in Oakland County Circuit Court. Plaintiffs alleged that Shacket and Helfman concealed their prior arrangements with Hartrick and Hulett, Inc., and inflated the price of the property in violation of their fiduciary duty to the partnership and with the intent to defraud plaintiffs.

The parties agreed to arbitration and selected former Circuit Court Judge William P. Hampton. In February of 1980, following a five day hearing, Arbitrator Hampton found Shacket and Helfman, but not Har-

---

**1.** The facts are more fully set forth in *Jaffa v. Shacket,* 114 Mich.App. 626, 319 N.W.2d 604 (1981).

**2.** Hulett, Inc., is a Michigan corporation incorporated by James Hartrick to "acquire, own, use, convey and otherwise dispose of and deal with or in real property or any interest". Hartrick was the president of Hulett, Inc., during most times relevant to this proceeding.

**3.** The parties disagree about whether Jaffa and Tarn were informed of the 1967 agreement of

Shacket, Helfman and Hartrick. The arbitrator found that there was not such a disclosure prior to the formation of Stay Company and that Jaffa and Taran did not learn of the agreement until late 1973. The Court of Appeals accepted the arbitrator's findings as true, stating "[t]his finding is amply supported by plaintiffs' testimony which the arbitrator found to be credible". 114 Mich.App. at 638, 319 N.W.2d 604. This Court similarly believes the finding to be supported by the evidence.

trick or Hulett, Inc., liable to plaintiffs in the amount of $257,189.75. The award was confirmed by the Oakland County Circuit Court.

The matter was subsequently appealed to the Michigan Court of Appeals. In an amended opinion dated April 5, 1982, the Court of Appeals upheld the arbitrator's conclusion that Shacket and Helfman breached their duties under the partnership agreement and committed fraud. The Court of Appeals, nevertheless, reduced the damage award by $92,000.00 so that the total judgment was $165,189.75.

On May 12, 1982, Helfman filed for relief under Chapter 7. On June 29, 1982, Shacket similarly filed for bankruptcy.

On August 11, 1982, plaintiffs filed adversary complaints against Helfman and Shacket to determine the dischargeability of the state court judgment. Plaintiffs assert that the state court judgment is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2) and § 523(a)(4).

On December 10, 1982, plaintiffs moved for summary judgment with regard to both Shacket and Helfman. Argument on the motions was heard on December 15, 1982, at which time the motions were taken under advisement. Plaintiffs have filed briefs in support of the motions; defendants have not filed briefs in response.

■ Plaintiffs' motions for summary judgment are based on the doctrine of collateral estoppel. Recent holdings of the Sixth Circuit conclusively establish that collateral estoppel may be applied in a dischargeability proceeding. *Spilman v. Harley*, 656 F.2d 224 (6th Cir.1981); *Smith v. Pitner*, 696 F.2d 447 (6th Cir.1982). *See also, United States v. Cole*, 20 B.R. 170 (Bkrtcy.N.D.Ohio 1982).

■ Whether collateral estoppel is to be applied in a particular case requires a court to determine: "that the precise issue in the latter proceedings have been raised in the prior proceeding, that the issue was actually litigated, and that the determination was necessary to the outcome." *Spilman,* 656 F.2d at 228. To make these determinations, the Bankruptcy Court must look to the entire record from the prior court proceedings. *Spilman, supra.*

In the present proceedings, plaintiffs first argue that the state court judgment is non-dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(2). Section 523(a)(2) provides in pertinent part:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; . . .

■ The party alleging non-dischargeability of the debt under § 523(a)(2)(A) must prove all of the elements of positive fraud incident to the creation of the debt. The elements to be proven by the objecting party are as follows: (1) the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the plaintiff; (4) that the plaintiff relied on such representations; and (5) that the plaintiff sustained the alleged loss and damage as the proximate result of the representations having been made. *In Re Houtman*, 568 F.2d 651, 655 (9th Cir.1978); *In Re Thomas*, 12 B.R. 765, 768 (Bkrtcy.N.D.Ga.1981). Fraud may consist of concealment or intentional nondisclosure as well as affirmative misrepresentation of material facts. *In Re Harris*, 458 F.Supp. 238 (N.Ore.1976), aff'd 587 F.2d 451 (9th Cir. 1978), *cert. denied*, 442 U.S. 918, 99 S.Ct. 2840, 61 L.Ed.2d 285 (1979); *In Re Thomas*, 12 B.R. at 768.

The basis of the prior proceeding was, first, that Shacket and Helfman breached the partnership agreement by failing to disclose their prior relationship with Hartrick; second, that Shacket and Helfman committed fraud in promising to convey the property at their cost, but in conveying it at an inflated price. With regard to the issue of fraud, the arbitrator found that Shacket's statement to Taran, that he and Helfman

would assign their offer to purchase the 145 acre parcel to Stay Company "at their cost", meant that "Shacket and Helfman would not add any amount to the purchase price above that which they had bought the right to purchase from the original landowners, i.e., $260,500." Therefore, as Shacket and Helfman increased the price to $525,000, the statement to Taran was, "at the time it was made, false and a knowing, material misrepresentation of fact, made with the intention that plaintiffs rely thereon, and plaintiffs did so rely to their detriment". *Jaffa v. Shacket,* unpublished award, ¶ 1, p. 15 (1980) (Hampton, Arb.).

The Michigan Court of Appeals ruled that the evidence supporting the arbitrator's finding of fraud was "ample". *Jaffa v. Shacket,* 114 Mich.App. 626, 640, 319 N.W.2d 604 (1982). The Court reviewed the elements of fraud under state law:

> "(1) a material representation which is false; (2) known by defendant to be false, or made recklessly without knowledge of its truth or falsity; (3) that defendant intended plaintiff to rely upon the representation; (4) that, in fact, plaintiff acted in reliance upon it; and (5) thereby suffered injury. *Hyma v. Lee,* 338 Mich. 31, 37; 60 N.W.2d 920 (1953), (*Cormack v. American Underwriters Corp.,* 94 Mich. App. 379, 385; 288 N.W.2d 634 (1979)). The false material representation needed to establish fraud may be satisfied by the failure to divulge a fact or facts the defendant has a duty to disclose."

114 Mich.App. at 640–641, 319 N.W.2d 604, *quoting, Fassihi v. Sommers, Schwartz, Silver, Schwartz & Tyler, PC,* 107 Mich.App. 509, 517, 309 N.W.2d 645 (1981). The Court then held:

> The evidence supporting the arbitrator's finding of fraud is ample. Defendants admit agreeing to convey "at their cost", and conveying at the higher value. As defendants had a duty to disclose the true initial cost and did not do so, the first element is satisfied. There is little question that the remaining elements of

fraud have been established. While the extent of plaintiffs' injury is disputed, the fact of injury is clear: plaintiffs were led to pay nearly twice the cost of the property through defendants' concealment. The fact that defendants themselves may not have "profited" by retaining the difference in cost is of no moment. *Hyma v. Lee, supra,* 37 [60 N.W.2d 920].

We find no error in the arbitrator's conclusion that defendants breached their duty to disclose and defrauded plaintiffs. 114 Mich.App. at 641, 319 N.W.2d 604.

■ Reviewing, in reverse order, the criteria set forth by the Sixth Circuit for determining whether collateral estoppel is applicable to a particular case, there is no question that the findings of Arbitrator Hampton and the Michigan Court of Appeals concerning fraud were essential to their judgments for plaintiffs. Further, there can be little doubt that the issue was fully litigated during the five days of hearing before the arbitrator and the subsequent appeal. Finally, it is the conclusion of this Court that the elements of fraud under state law are substantially similar to those embraced by 11 U.S.C. § 523(a)(2)(A) and that the factual findings made in the state proceedings satisfy all the elements of a 523(a)(2)(A) cause of action.

As the findings of fact made in the state proceedings satisfy all of the elements of a § 523(a)(2)(A) cause of action, this Court finds that collateral estoppel applies herein; that there is not a genuine issue of material fact to be litigated; and, that the debt is non-dischargeable under § 523(a)(2)(A).

Having already determined that the judgment debt is nondischargeable pursuant to § 523(a)(2)(A), the Court need not reach the second issue raised by plaintiffs that the debt is non-dischargeable pursuant to § 523(a)(4).[4]

The motions of plaintiffs for summary judgment in adversary proceeding numbers

---

4. It is noted that defendants had a duty to disclose their relationship with Hartrick and the terms of the 1967 agreement pursuant to state law, and that defendants' failure to do so, coupled with their unkept promise to convey the property at issue "at their cost", satisfies the requirements of § 523(a)(2)(A), regardless of the status of defendants under § 523(a)(4).

82–1709 and 82–1710 ARE hereby GRANTED.

So ordered.