In re ALLIED SUPERMARKETS, INC., a Michigan corporation, Debtor.

Albert SEMAAN, Al Semaan, Inc., a Michigan corporation d/b/a Food Center Supermarket, Inc., a dissolved Michigan corporation; Food Shoppers, Inc., a dissolved Michigan corporation; and Food Center Supermarket–Six Mile Limited, a dissolved Michigan corporation, jointly and severally, Belair Supermarket, Inc.; Semaan's Market, Inc.; Belair Supermarket, Inc., # 2; Thomas Simaan, individually and d/b/a Chrystal Palace; Tony Semaan and Ruth Semaan, his wife; and Peter Semaan, jointly and severally, Plaintiffs–Appellees,

v.

ALLIED SUPERMARKETS, INC., Defendant–Appellant.

No. 90–1826.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 6, 1990.

Decided Dec. 16, 1991.

Rehearing Denied Jan. 22, 1992.

Alan M. Greene, Daniel P. Stella (argued), Kathleen McCree Lewis (briefed), Dolores Nunez, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for plaintiffs-appellees.

Norman C. Ankers (briefed), James K. Robinson (argued), Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for defendant-appellant.

Before RYAN and NORRIS, Circuit Judges, and ALLEN, Senior District Judge.[*]

RYAN, Circuit Judge.

Defendant Allied Supermarkets appeals the judgment of the district court affirming the order of the bankruptcy court finding Allied liable for fraud and dismissing Allied's counterclaims against Albert Semaan and Thomas Simaan for debts owed on personal guaranties. The issues raised on appeal are:

1) Whether the original bankruptcy trial court erred in finding Allied liable for fraud;

2) Whether the successor bankruptcy court abused its discretion in failing to grant Allied's motion for new trial;

3) Whether the successor bankruptcy court made additional liability findings in violation of this court's earlier mandate on remand;

4) Whether the bankruptcy court erred in concluding that the plaintiffs' judgments were not dischargeable under Allied's reorganization plan; and

5) Whether the bankruptcy court erred in dismissing Allied's counterclaims against Albert Semaan and Thomas Simaan for debts owed on personal guaranties.

For the reasons expressed below, we affirm the judgment of the district court in all respects.

## I.

The plaintiffs in this appeal include various members of a family of Iraqi immigrants. This opinion shall refer to them collectively as the Semaans. The Semaans emigrated to the United States from Iraq and settled in the Detroit area, where they began operating grocery stores. In 1966, they commenced a business relationship with the defendant, Allied Supermarkets, a large wholesale supplier of groceries and merchandise.

As part of its sales service, Allied offered to its customers, including the Semaans, a complete marketing program. Under this program, Allied determined the level of competition in a given customer's geographic region and, based on that determination, recommended specific retail

* The Honorable Charles M. Allen, Senior United States District Judge for the Western District of Kentucky, sitting by designation.

prices for all the goods that it supplied to the customer. This information was provided to the customer on two separate computer printouts. The first printout accompanied the shipment of the goods and the second was received by the customer about a week after delivery. The information contained in these printouts is at the core of the dispute in this case.

The printout that accompanied the shipment described the items in the shipment, set forth the total cost to the grocer and the total retail sales price if the grocer followed the suggested retail pricing scheme, and, under the term "gross profit," provided a percentage figure. It did not explain the basis for this gross profit percentage. In fact, it represented the profit as a percentage of retail sales, taking into account only the cost of the groceries and not certain other incidental fees charged by Allied for such items as freight, service, and labeling. This printout did not indicate these fees, although they did appear on the printout that was received later.

The second printout arrived about a week after the delivery and was a more comprehensive billing. It provided a detailed breakdown of the product costs. First, it separated the products into a number of categories, such as "dairy," "meat," and "produce." Second, it broke down the costs for each of these categories of products into a number of columns. In addition to indicating the total "product cost" and retail sales return, if Allied's pricing scheme was followed, for each category of products, this printout itemized additional costs to the grocer, including service and freight charges and labeling fees. The last column in this section of the printout indicated the "total billing" which was the sum of the total product costs, the service and freight charges, and the labeling fees.

In a separate section, the printout provided gross profit information. In this section, the following information was set out in columns: the total product cost, the retail sales return, if Allied's pricing scheme was followed, the gross profit in dollars,

and a gross profit percentage. The printout did not indicate the basis for the gross profit calculations. In fact, the gross profit numbers represented the difference between the retail sales and the total product cost. Significantly, the total product cost did not include Allied's charges for service, freight, and labeling. The gross profit percentage was determined by dividing the gross profit by the retail sales.

The Semaans continued to do business with Allied under this billing scheme until 1978. In 1978, Tony Semaan was in default on a bank loan for a supermarket in Highland Park, Michigan. He told the bank that he could not explain his cash flow problems and did not understand why he was not making more money. After carefully reviewing the Allied printouts, the bank informed Semaan that the gross profit figures prepared by Allied did not reflect the incidental fees charged by Allied for freight, service, and labeling, and that, as a result, he was making somewhere between three and five percent less than he thought he was.

After Tony Semaan shared this information with the other Semaans, they terminated their business relationship with Allied and brought an action in state court, alleging, among other things, fraud and misrepresentation by Allied in its statement of the gross profit figures. When the Semaans learned that Allied had instituted Chapter XI reorganization proceedings[1] in bankruptcy court, they filed proofs of claims. Allied subsequently asserted counterclaims against the corporate plaintiffs for money owed Allied on merchandise delivered to stores operated by the Semaans, and against certain of the Semaans (individually), including Albert Semaan and Thomas Simaan, on personal guaranties they allegedly made on the corporate debts.

The bankruptcy court conducted a trial on the liability issue of the Semaans' claims and on both the liability and damages issues of Allied's counterclaims. Ruling from the bench, Judge Harry Hackett found Allied liable, holding that Allied's computation of the gross profit figures,

---

1. Because Allied's bankruptcy occurred before the implementation of the Bankruptcy Amendment Act of 1978, the rules of the former Bankruptcy Act, 11 U.S.C. § 1 *et seq.*, apply.

without including the incidental costs, "was a misrepresentation by the defendant … it was material, upon which [plaintiffs] reasonably relied." The court also found that Allied's conduct was intentional, explaining that "[i]t is intentional to the extent that I am saying that this is gross profit and it is a representative figure of gross profit and you believe it."

Upon Allied's request, Judge Hackett reopened the proceedings to hear additional testimony. Following this testimony, Judge Hackett again ruled from the bench and adopted his previous findings, noting that "[t]he way the transaction was handled, the entire matter, based upon the facts, the entire facts and all of the circumstances in this case, it is inconceivable for anyone to find that there was not a misrepresentation here." The court further held that Albert Semaan and Thomas Simaan were not personally liable on the debts owed to Allied.

Before the matter proceeded further, Judge Hackett retired from the bench, and the case was assigned to Judge George Woods. Following this reassignment, Allied moved for a new trial, and Judge Woods granted it because "there was yet no final judgment and because 'substantial justice' required a rehearing." Judge Woods refused, however, to rehear the evidence and so the "new trial" consisted of a consideration of the record made at the 1980 trial. After reviewing the 1980 trial record, Judge Woods made extensive written findings of fact and conclusions of law, holding that plaintiffs had not carried their burden of proving intentional misrepresentation. He then dismissed the suit against Allied and found plaintiffs liable on Allied's counterclaims.

The Semaans appealed Judge Woods' decision to the United States District Court. The district court affirmed, finding that Judge Woods had not abused his discretion in ordering a new trial and holding that "Judge Woods' findings of fact are not clearly erroneous and, indeed, are more than substantially supported by the record."

The Semaans then appealed the district court's decision to this court, which reversed, holding that although it was within the successor bankruptcy judge's discretion to grant a new trial under Fed.R.Civ.P. 63, he should have accorded the parties "the right to present the witnesses' live testimony to the successor judge so that he may be in a position to judge their credibility in reaching a decision."

By the time the case returned to the bankruptcy court on remand, yet a third judge had been assigned to the case, Judge Ray Reynolds Graves. Judge Graves denied Allied's second motion for a new trial, holding that "[a]bsent special circumstances, a successor judge may not overrule a decision of the first." The court found no such special circumstances and upheld Judge Hackett's original determination that Allied was liable to the Semaans for intentional misrepresentations in connection with its contracts with them.

The bankruptcy court then held a hearing on the issue of damages. Noting that Allied's actions were "intentional, reckless and wanton," the court awarded the Semaans damages of over $727,000. The court further awarded $135,000 in exemplary damages, and $100,000 in attorneys' fees, plus interest. The court also concluded that this award was not dischargeable in bankruptcy.

Allied appealed to the district court which affirmed the bankruptcy court's decision that the Semaans were entitled to damages from Allied and that this recovery was not dischargeable under Allied's plan of reorganization. Upon reconsideration, the district court reversed its prior affirmance of the bankruptcy court as to the personal guaranties made by Albert Semaan and Thomas Simaan. The court then remanded the case for a new trial on this issue only.

The bankruptcy court conducted a new trial on this issue and dismissed Allied's claims, concluding that Allied had failed to establish that Albert Semaan and Thomas Simaan intended their guaranties to apply to the specific corporate entities against which Allied had judgments for goods sold and delivered. Moreover, the court held,

even if Allied had satisfied its burden, the personal guaranties were rendered unenforceable by Allied's fraud with respect to the underlying contracts.

Allied appealed to the district court which declined to reconsider the court's previous rulings and affirmed the decision of the bankruptcy court, finding that Allied's fraud excused Albert Semaan and Thomas Simaan from liability on the personal guaranties. Allied's appeal to this court followed.

## II.

The first issue this court must address is whether Judge Hackett erred in finding Allied liable for intentional misrepresentation. Allied makes two arguments with respect to this finding by Judge Hackett. First, Allied asserts that Judge Hackett found Allied liable only for innocent or negligent misrepresentation, not fraud. Second, Allied contends that even if Judge Hackett found fraud, that finding was clearly erroneous and should therefore be reversed. These arguments are considered in turn below.

## A.

Allied argues that Judge Hackett found Allied liable only for innocent or negligent misrepresentation, not fraud. We find that even though Judge Hackett never specifically used the word "fraud" in his oral opinion, he found all of the elements necessary for a showing of fraud under Michigan law. We therefore conclude that Judge Hackett did find Allied liable for fraud.

Under Michigan law, a finding of intentional misrepresentation is the same as a finding of fraud. *General Elec. Credit Corp. v. Wolverine Ins. Co.*, 420 Mich. 176, 188–89, 362 N.W.2d 595 (1984). Both consist of the following six elements:

(1) [t]hat defendant made a material representation;

(2) that it was false;

(3) that when the he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion;

(4) that he made it with the intention that it should be acted upon by plaintiff;

(5) that plaintiff acted in reliance upon it; and

(6) that he thereby suffered injury.

*Schwartz v. Electronic Data Sys.*, 913 F.2d 279, 285 (6th Cir.1990) (quoting *Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813 (1976)).

Judge Hackett found that: (1) Allied made, by implication or knowing nondisclosure, a material representation that the gross profit figures in its billing printout represented the Semaans' profits after taking into consideration all costs; (2) that it was false; (3) that Allied knew it was false when made; (4) that it was made with the intention that the Semaans act upon it; (5) that the Semaans relied upon it; and (6) that the Semaans suffered economic injury as a result. These findings constitute a finding of fraud under Michigan law.

Allied argues, however, that the following language of Judge Hackett suggests that he was only finding Allied liable for negligent misrepresentation:

What Allied is representing here through these papers: We are giving you a gross profit utilizing acceptable standards in order to do it.

It has been said by Allied, not the accountants for the plaintiffs here. But does that excuse Allied from even negligence?

It wasn't intentional, intentional to the extent that we don't do you in, we are not going to hurt you.

It is intentional to the extent that I am saying this is gross profit and it is a representative figure of gross profit and you believe it. It is intentional to that extent, but not intentional to the extent that they are going to wipe the Semaans out.

And if it wasn't [sic] intentional, it certainly showed some lack of due care.

Allied interprets this language as meaning that Judge Hackett found Allied liable only for negligent misrepresentation. We interpret it differently. Although Judge Hackett mentions a negligence standard, the holding that Allied acted negligently is

in the alternative: "And if it wasn't intentional, it certainly showed some lack of due care." In the paragraph immediately preceding this statement, however, Judge Hackett finds that although Allied did not intend "to wipe the Semaans out," it did intend to deceive the Semaans about their gross profits: "It is intentional to the extent that I am saying that this is gross profit and it is a representative figure of gross profit and you believe it." That Judge Hackett found negligence in the alternative does not alter the fact that he found that Allied made an intentional misrepresentation which, under Michigan law, is the equivalent of fraud. *See General Electric Credit*, 420 Mich. at 188–89, 362 N.W.2d 595. We conclude therefore that Judge Hackett found Allied liable for fraud.

### B.

■ Allied argues that Judge Hackett's finding was erroneous both as a matter of fact and of law. We consider its attack of the factual finding first.

Rule 52(a) of the Federal Rules of Civil Procedure provides our standard of review for a trial court's findings of fact:

> Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

Allied contends that there was insufficient evidence to support a finding of intentional misrepresentation and that Judge Hackett's finding was therefore clearly erroneous.

Our review of the record indicates otherwise. Allied's former credit manager testified that the Semaans did not know that the service charges and labeling fees were not included in the calculation of the gross profit figures provided by Allied. He further testified that no one from Allied ever told the Semaans otherwise, even though Allied knew of their misconception. Finally, he testified that Allied told the Semaans that if they charged the suggested retail price for the goods, they would make the gross profits reflected on Allied's computer sheets.

The record also demonstrates, and Judge Hackett found, that the Semaans did not have the mathematical ability to compute the gross profit percentage. The record further demonstrates that Allied told the Semaans that if they followed Allied's plan, they would not have to calculate anything, including profits. This evidence is sufficient to support the conclusion that Allied intentionally led the Semaans to believe that the gross profit percentage was calculated on the basis of the total cost charged by Allied, including the service and freight charges and the labeling fees. Under Michigan law, this conduct amounted to fraud. The Michigan Supreme Court has recognized that "[w]hen the circumstances surrounding a particular transaction are such as to require the giving of information, a deliberate and intentional failure to do so may properly be regarded as fraudulent in character." *Ainscough v. O'Shaughnessey*, 346 Mich. 307, 316, 78 N.W.2d 209 (1956).

Allied also argues that as a matter of law, fraud cannot be found when all of the information necessary to discover any misrepresentation was made available to the allegedly defrauded party. Allied contends that the billing printout informed the Semaans of the additional charges for freight, service, and labeling, and that some simple mathematics would have revealed their gross profit percentage after taking these costs into account. Allied concludes that, under these circumstances, it cannot be found liable for fraud.

In support of this argument, Allied relies on *Schuler v. American Motor Sales Corp.*, 39 Mich.App. 276, 197 N.W.2d 493 (1972). In *Schuler*, the plaintiff purchased stock in a company that had a substantial inventory of new cars. The plaintiff claimed that there had been material deficiencies in the defendant's representations concerning the company. *Id.* at 278–79, 197 N.W.2d 493. The evidence showed, however, that all deficiencies claimed by the plaintiff were reported on schedules attached to the purchased company's financial statements. *Id.* at 279, 197 N.W.2d

493. The evidence further demonstrated that plaintiff had received the statements to read and had signed them, although he had not read them. *Id.* at 279–80, 197 N.W.2d 493. The court held that when a seller has revealed all the facts necessary to discover any misrepresentation, the buyer may not later claim fraud. *Id.* at 280, 197 N.W.2d 493.

The facts of *Schuler*, however, are distinguishable from the facts of this case. In *Schuler*, the plaintiff had been told to read the financial statements and chose not to do so. In this case, by contrast, Allied told the Semaans that they would not have to calculate anything, including their gross profits. Indeed, Allied's former credit manager testified that the simplicity and ease of the Allied system were its prime selling points. Thus, although Allied provided the Semaans with the necessary information to determine their gross profit after including the charges for service, freight, and labeling, they discouraged the Semaans from using that information to make their own calculations and encouraged them to rely instead on its representations.

The Michigan Supreme Court has long recognized that the relationship between the parties is crucial in determining whether fraud has occurred. In *Hayes Constr. Co. v. Silverthorn*, 343 Mich. 421, 426–27, 72 N.W.2d 190 (1955), the court stated that when the seller has special knowledge upon which the buyer would naturally rely, the parties do not stand on equal terms, and the buyer can rely on the seller's representations. *Id.* In *Hayes*, the Court concluded that there was no special relationship because the "[m]eans of knowledge were open to [the plaintiff] and the degree of their utilization was circumscribed in no respect by defendant...." *Id.* at 427, 72 N.W.2d 190.

In this case, however, Allied told the Semaans that it had special expertise in the grocery business and, if plaintiffs followed the Allied system, they would profit. Thus, even if Allied provided the Semaans with the means to discover their gross profits after paying all of the fees, Allied circumscribed the Semaans' use of that information by discouraging them from making any calculations. Allied is a sophisticated business with special knowledge in the grocery business; the Semaans are Iraqi/Chaldean immigrants. These parties did not stand on equal terms, and it was natural for the Semaans to rely on Allied's representations concerning the gross profit figures. Therefore, the fact that Allied actually provided the Semaans with sufficient information to discover their gross profits after including the additional costs is not a legal bar to the Semaans' claim of fraud. Accordingly, we find that the bankruptcy court did not err in its finding of fraud.

### III.

Allied argues next that the second successor judge in the bankruptcy court, Judge Graves, abused his discretion in failing to grant a new trial. Under Rule 63 of the Federal Rules of Civil Procedure, a successor judge may, in his discretion, grant a new trial after a verdict has been returned or findings of fact and conclusions of law have been filed, if the judge determines that he cannot perform his duties because he "did not preside at the trial or for any other reason."

Allied argues that a new trial should have been granted because the trial judge, Judge Hackett, failed to make sufficient findings of fact under Rule 52(a) of the Federal Rules of Civil Procedure. This issue was not passed on by the district court below. Although as a general rule federal appellate courts do not consider issues not passed on below, deviations are permitted in exceptional circumstances. *Pinney Dock & Transport Co. v. Penn Central Corp.*, 838 F.2d 1445, 1461 (6th Cir.), *cert. denied*, 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). The *Pinney* court noted "that to the extent the issue is presented with sufficient clarity and completeness and its resolution will materially advance the progress of this already protracted litigation, we should address it." *Id.* Because the issue in this case involves the application of a legal standard to the factual findings of the trial judge in the bankruptcy court, we conclude that it is

presented with sufficient completeness and clarity for this court to resolve it.

Our analysis begins with Rule 52(a), which provides, in relevant part:

> In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon. . . .

Under this rule, the trial court must state its findings with sufficient specificity to indicate to the appellate courts the factual basis for its conclusions of law. *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1444 (9th Cir.1985).

Allied argues that Judge Hackett's findings were insufficient for two reasons. Allied contends, first, that he did not make the subsidiary factual findings necessary to support a legal conclusion of fraud. Allied's second argument is that Judge Hackett's findings were insufficient because he failed to address crucial defense evidence.

We conclude that although Judge Hackett's findings of fact were not made with desirable clarity, they satisfied, if minimally, the requirements of Rule 52(a). Allied argues that Judge Hackett merely stated his conclusion that there had been an intentional misrepresentation without elucidating the necessary findings of fact to support that conclusion. Allied contends that *Pepi, Inc. v. Helcar Corp.*, 458 F.2d 1062 (3d Cir.1972), supports this argument. In *Pepi*, the trial court concluded that "the entire course of the transaction" was "permeated" with "fraudulent inducements, misrepresentations and false intentions." *Id.* at 1063. It made no subsidiary findings of fact to support this conclusion, however. *Id.* Nor did it indicate what statements or conduct it considered fraudulent. The Third Circuit concluded correctly that such a conclusory finding could not be sustained under Rule 52(a). *Id.* at 1064–65.

■ The facts of this case, however, differ significantly from the facts of *Pepi*. In *Pepi*, the trial court made no subsidiary findings of fact whatever on the issue of fraud. In this case, Judge Hackett specifically found that Allied intentionally misrepresented the meaning of the gross profit figures on its computer printouts. He referred to exhibits in the record, Allied's billing printouts, and articulated the reasons why he concluded that those exhibits established misrepresentation. Rule 52(a) does not require an exhaustive determination of all the facts. It simply requires that the findings be sufficient to indicate the factual basis for the court's conclusion. *Unt*, 765 F.2d at 1444. Judge Hackett's findings satisfied this requirement.

■ Allied also argues that Judge Hackett failed to fulfill his obligation under Rule 52 because he never addressed Allied's expert testimony that the manner in which Allied calculated gross profit was fair and reasonable. Allied attempts to analogize this case to a case decided by the Fifth Circuit. *Golf City, Inc. v. Wilson Sporting Goods Co.*, 555 F.2d 426 (5th Cir.1977). In *Golf City*, the court found the trial court's factual findings to be inadequate under Rule 52(a) in part "because they fail to deal with uncontradicted, substantial defense evidence" that created a conflict in the evidence. *Id.* at 435. The court noted:

> While it is true ... that the court need not deal with every piece of evidence or every argument raised, it is equally true that
>
> > "the reviewing court deserves the assurance that the trial court has come to grips with apparently irreconcilable conflicts in the evidence ... and has distilled therefrom true facts in the crucible of his conscience."

*Id.* (quoting *Keystone Plastics, Inc. v. C & P Plastics, Inc.*, 506 F.2d 960, 962 (5th Cir.1975)).

Although we agree with the analysis of the court in *Golf City*, we conclude that it does not apply to this case. In *Golf City*, the court held that the trial court's findings were inadequate because they did not address evidence that created an irreconcilable conflict of evidence concerning a material issue. *Id.* Allied argues that Judge Hackett's findings are inadequate because he did not address its evidence that its calculation of gross profit was fair and reasonable under standard accounting procedures. Although Judge Hackett did not explicitly reject this evidence, his findings

indicate that given the other facts of this case, this evidence was irrelevant. Indeed, shortly after mentioning Allied's argument that its calculations of gross profit were made "utilizing acceptable standards," Judge Hackett nevertheless found that the gross profit figures constituted intentional misrepresentations.

We therefore conclude that Judge Hackett was not required to make a finding concerning whether Allied's calculations were reasonable under accepted accounting standards because he found that, under the circumstances of this case, the calculations were intentional misrepresentations regardless of whether they were reasonable under accepted accounting standards. He concluded that Allied abused its special relationship with the Semaans to foster a misunderstanding of what the gross profit figures meant. Thus, because Allied's evidence did not create an irreconcilable conflict in the evidence concerning a material issue, Judge Hackett was not obliged to address it under Rule 52.

Because Judge Hackett's findings were adequate under Rule 52(a), we conclude that Judge Graves did not abuse his discretion in denying Allied's motion for a new trial.

## IV.

Allied also argues that Judge Graves violated this court's earlier mandate. According to Allied, Judge Graves exceeded his authority under the mandate by making "additional" liability findings after the damages trial without granting Allied a trial *de novo* of the liability issue. Federal Rule of Civil Procedure 63 provides that a successor judge may, in his discretion, grant a new trial after a verdict has been returned or findings of fact and conclusions of law have been filed, if the judge determines that he cannot perform his duties because he "did not preside at the trial or for any other reason." In our 1985 decision, we held that, under Rule 63, if a successor judge "determines not to readopt the findings of fact and conclusions of law

previously made ... he must then grant a trial *de novo.*"

Allied's argument here rests on its conclusion that Judge Graves made "additional, contrary" liability findings following the damages trial. Allied contends that Judge Hackett found Allied liable only for innocent or negligent misrepresentation and that Judge Graves made the additional finding that Allied was liable for "intentional, wanton, and reckless" fraud in order to award the Semaans exemplary damages. Our reading of the record does not support this conclusion. As noted, we conclude, contrary to Allied's contention, that Judge Hackett did find Allied liable for intentional misrepresentation. That Judge Graves employed embellishing language in referring to Judge Hackett's finding does not alter the fact that he readopted the legally substantive previous finding that Allied intentionally misrepresented to the Semaans the gross profit figures. This finding was all that was needed to warrant an award of exemplary damages. We therefore conclude that Judge Graves did not violate our mandate and did not abuse his discretion under Rule 63 of the Federal Rules of Civil Procedure.

## V.

We next consider whether the bankruptcy court erred in concluding that the Semaans' judgments against Allied were not dischargeable under Allied's reorganization plan. Allied argues that the judgments are dischargeable because they are considered unsecured claims under its reorganization plan. The Semaans argue that their claims are not dischargeable because they are not provable under the former Bankruptcy Act, 11 U.S.C. § 1, *et seq.*, and, even if they were provable, they are not dischargeable under section 17 of that Act.

■ We need not decide whether the claims were provable because, even if they were, we conclude that they would not be dischargeable under section 17(a)(2) of the former Act, which provides:

a. A discharge in bankruptcy shall release a bankrupt from all of his provable

debts, whether allowable in full or in part, except such as....

....

(2) are liabilities for obtaining money or property by false pretenses or false representations....

11 U.S.C. § 35 (repealed 1978). Courts have consistently held that for this section to bar discharge, the fraud must be of a "type involving moral turpitude or intentional fraud." *In re Taylor*, 514 F.2d 1370, 1373 (9th Cir.1975).

■ Judge Graves concluded that the Semaans' claims were within section 17(a)(2) and were therefore not dischargeable. Allied contends that this determination exceeded Judge Graves' authority as a successor judge. Allied maintains that Judge Hackett's liability determinations do not support a conclusion of "moral turpitude or intentional fraud," even if they support a finding of intentional misrepresentation. Consequently, says Allied, Judge Graves' conclusion that the Semaans' claims were not dischargeable went beyond Judge Hackett's findings and constituted an abuse of discretion under Fed.R.Civ.P. 63 and a violation of this court's mandate in its previous opinion.

We reject this reasoning because, as discussed above, we conclude that Judge Hackett's liability findings supported a conclusion of fraud of the type necessary to satisfy the requirements of section 17(a)(2). Judge Hackett determined that Allied had intentionally deceived the Semaans. Such intentional deception is exactly the type of fraud covered by the bar to dischargeability found in section 17(a)(2). That such deception takes the form of an intentional nondisclosure of a material fact or an implied representation makes no difference. *See, e.g., In re Shacket*, 26 B.R. 930, 932 (Bankr.E.D.Mich.1983); *In re Newmark*, 20 B.R. 842, 858 (Bankr.E.D.N.Y.1982).

Accordingly, Judge Graves did not err in concluding that, under section 17(a)(2) of the former Bankruptcy Act, the Semaans' judgments are not dischargeable.

## VI.

■ The final issue that must be addressed is whether the lower court erred in dismissing Allied's counterclaims against Albert Semaan and Thomas Simaan on personal guaranties made on corporate debts owed to Allied. We think it did not.

■ As a general rule, contracts executed under fraud may be held unenforceable. *Solo v. Chrysler Corp.*, 408 Mich. 345, 352, 292 N.W.2d 438 (1979); *Rood v. Midwest Matrix Mart, Inc.*, 350 Mich. 559, 564, 87 N.W.2d 186 (1957). Moreover, misconduct by a creditor which has a material adverse effect on the rights or obligations of a guarantor voids the contract of guaranty between the parties. *See P.R. Post Corp. v. Maryland Casualty Co.*, 68 Mich. App. 182, 189, 242 N.W.2d 62 (1976), *modified on other grounds*, 403 Mich. 543, 271 N.W.2d 521 (1978). *See generally* 74 Am. Jur.2d *Suretyship* § 127 (1974). In addition, a guarantor may assert both the defenses available to the primary obligor regarding the principal obligation on the debt and any personal defenses that arise out of the guaranty obligation. *See P.R. Post Corp. v. Maryland Casualty Co.*, 403 Mich. 543, 552, 271 N.W.2d 521 (1978). Fraud is one such defense. *Id.*

■ As discussed above, we conclude that the trial court correctly determined that Allied is liable for intentional misrepresentation against the Semaans in the transactions for which Allied seeks to enforce the personal guaranties. Because this misconduct by a creditor, Allied, had a material adverse effect on the obligations of Albert Semaan and Thomas Simaan as guarantors, the contracts of personal guaranty are void and the obligations are unenforceable.

But even if the guaranties were not void for this reason, we conclude that the bankruptcy court's findings concerning the scope of the personal guaranties are not clearly erroneous. The guaranties refer to corporate entities different than those against which Allied has claims. Allied argues that Albert Semaan and Thomas Simaan should nevertheless be held liable on the guaranties because the parties intended the guaranties to apply to the corporations to which Allied delivered goods on credit. Following a second remand, the

bankruptcy court conducted a new trial on this issue and concluded that Allied had failed to establish that Albert Semaan and Thomas Simaan intended their guaranties to apply to the specific corporate entities to which Allied sold goods on credit. On appeal, the district court affirmed.

We review a trial court's findings of fact for clear error. Fed.R.Civ.P. 52(a). After carefully reviewing the bankruptcy court's findings and the record on which they were based, we conclude that the court's finding that Allied had failed to establish the necessary intent on the part of Albert Semaan and Thomas Simaan is not clearly erroneous.

### VII.

For the foregoing reasons, we AFFIRM the decision of the district court in all respects.