NOT FOR PUBLICATION
File Name: 08a0441n.06
Filed: July 25, 2008

NO. 07-5314

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

DANNY G. WARE;
LAUREN B. BOVILL-WARE,

    **Plaintiffs-Appellants,**    ON APPEAL FROM THE
                    UNITED STATES DISTRICT
v.                 COURT FOR THE MIDDLE
                    DISTRICT OF TENNESSEE
TOW PRO CUSTOM TOWING
AND HAULING, INC.

    **Defendant-Appellee,**

_____/

BEFORE:  SUHRHEINRICH, SUTTON and GRIFFIN, Circuit Judges.

    **SUHRHEINRICH, Circuit Judge.** Plaintiffs Danny G. Ware and Lauren B. Bovill-Ware

filed this action alleging conversion and violation of the Tennessee Consumer Protection Act . The

district court granted summary judgment to Defendant Tow Pro Custom Towing and Hauling, Inc.

For the reasons that follow, we AFFIRM.

**I. Background**

    In June 2000, the Wares bought a used 1996 Kenworth truck from a truck dealer in Charlotte,

North Carolina, for $47,915.00.  In October 2000, Danny Ware had the vehicle inspected at the TA

Truckstop in Nashville, Tennessee.  The truckstop mechanic discovered certain commercial motor

vehicle safety violations.  Danny Ware left the truck in the parking lot of the truckstop.  He claims

to have obtained a verbal communication from an employee of the truckstop that he could leave the

vehicle there for an indeterminate amount of time.  Danny Ware never paid any vehicle storage fee.

Eight months later, the Wares initiated a breach of warranty action against the vendor of the truck in state court in Charlotte, North Carolina, based on the defects discovered at the TA Truckstop. While that case was pending, the truck remained at the TA Truckstop in Nashville.

On July 10, 2002, twenty-two months after the Wares left the truck at the TA Truckstop, a security manager at the TA Truckstop requested that Defendant Tow Pro remove the truck from the premises. Tow Pro impounded the vehicle at its storage lot in Nashville. The truck did not have a license plate or any other indicia of ownership. On July 12, 2002, Tow Pro sent a Form SF-0957 to the Tennessee Department of Safety requesting the name and address of the owners and lienholders of the vehicle. The Department of Safety instructed Tow Pro to contact the Georgia Department of Motor Vehicles for current information. On August 13, 2002, Tow Pro did so, but received no response.

On October 7, 2002, Danny Ware contacted Tow Pro, communicating that he owned the truck. Tow Pro's manager told Ware that he must pay $4,996.63 (which included a $125.00 towing fee and eighty-nine days of storage at $50/day) before Tow Pro would release the truck. On October 8, 2002, Tow Pro told the Wares' attorney that the truck was being held in lieu of the outstanding charges for vehicle storage at the TA Truckstop, and that it was subject to sale at a foreclosure sale within ten days if the charges were not paid and the vehicle retrieved. On October 9, 2002, the Wares' attorney sent a letter to Tow Pro acknowledging Tow Pro's claim for $4,996.63 in towing and storage fees, as well as the fact that Tow Pro intended to sell the vehicle at a public auction if the Wares did not pay the storage charges within ten days.

On October 15, 2002, Lauren Ware received a certified mail notice sent by Tow Pro advising that the truck would be sold at a possessory lien foreclosure auction if not retrieved within ten days.

On  October 31, 2002, and November 7, 2002, Tow Pro published notices of the sales of the truck in the *Nashville Record*.  The identical notices stated that Tow Pro would sell the vehicle, a "1996 Kenworth T-600 1XKAD89X2TR," on November 14, 2002.  The notices did not set out the specific address of the sale or the owner of the truck.  Tow Pro did not expressly notify the Wares or their attorney of the sale.

On November 14, 2002, Doug Williams, President and Manager of Tow Pro, purchased the truck at the referenced sale for the sum of $200.00.  He was the only buyer at the sale.

Plaintiffs claim that their counsel wrote to Tow Pro in September 2003 regarding the status of the truck and proposing a settlement, and that Tow Pro demanded $20,000 before it would release the truck. An invoice dated July 3, 2003, reflects this demand.  However, the truck had been sold ten months earlier.

On June 15, 2004, the Wares filed this lawsuit.  Tow Pro filed a countercomplaint seeking to recover its towing and storage costs.  Tow Pro also filed a motion for summary judgment, arguing *inter alia*, that the Wares' claims were preempted by federal law.  On January 12, 2007, the district court granted the motion.  *See Ware v. Tow Pro Custom Towing & Hauling, Inc.*, No. 3:04-0528, 2007 WL 108885 (M.D. Tenn. Jan. 12, 2007).

The district court held that the Wares' conversion claims, "including any claims regarding alleged unauthorized storage charges or Defendant's alleged violations of Tennessee statutes regarding notice as to storage fees and sales," were preempted by federal law, namely the Interstate Commerce Act, as amended by the Federal Aviation Administration Authorization Act of 1994, 108 Stat. 1610, and the ICC Termination Act of 1995, 109 Stat. 899 (FAAAA), codified at 49 § 14501.  The court held that the Wares' claim under the Tennessee Consumer Protection Act (TCPA), Tenn Code Ann. §§ 47-18-101-125, lacked evidentiary support.  The court further concluded that the

TCPA, which prohibits "unfair or deceptive acts or practices affecting the conduct of any trade or commerce," did not apply to the conduct at issue here.

Thereafter the parties stipulated to the dismissal of Tow Pro's counterclaim. On February 23, 2007, the district court entered an order constituting final judgment for Tow Pro.

The Wares argue on appeal that the district court erred in granting Tow Pro summary judgment on their claims that: (1) Tow Pro committed the tort of conversion by charging unlawful storage fees; (2) Tow Pro's failure to provide them sufficient notice of the storage fees and sales constituted conversion; and (3) Tow Pro's conduct in continuing to negotiate with them after Tow Pro sold the truck violated the TCPA. The Wares contend that we may reach the merits of their claims because the district court erred in determining that 49 U.S.C. § 14501(c)(1) preempted their state law claims.

## II. Analysis

This Court reviews the district court's grant of summary judgment de novo. *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

We review the district court's preemption ruling, as well as its interpretation and construction of the FAAAA, de novo. *See Nye v. CSX Transp., Inc.* 437 F.3d 556, 560 (6th Cir. 2006).

Congress deregulated trucking in 1980, and in 1994 enacted § 14501(c) to preempt state trucking regulations. *Rowe v. New Hampshire Motor Transport Ass'n*, 128 S. Ct. 989, 993 (2008) (holding that two state statutes aimed at preventing delivery by truck of tobacco products to minors are preempted by the FAAAA). Section § 14501(c)(1) provides, subject to certain exceptions (such as one for certain aspects of nonconsensual towing, which we will address shortly), that "a State,

political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). The FAAAA's language was patterned after the preemption provision of the Airline Deregulation Act of 1978, which preempts state laws "relating to rates, routes, or services of any air carrier . . . when such carrier is transporting property." *See Rowe*, 128 S. Ct. at 993. In *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992), the Court read the ADA's preemption provision broadly, concluding that the "related to" clause "express[ed] a broad pre-emptive purpose." *Id.* at 383. The *Morales* Court ruled that "[s]tate enforcement actions having a connection with, or reference to" carrier "rates, routes, or services" are preempted, *id*. at 384, and that such preemption may occur even if a state law has only an "indirect" effect on rates, routes, or services. *Id.* at 386. Furthermore, preemption occurs where state laws have a "significant impact" related to Congress' deregulatory and preemption goals. *Id.* at 390. The Supreme Court recently followed *Morales* in interpreting § 14501(c)(1). *See Rowe*, 128 S. Ct. at 994.

Tow trucks are considered "motor carrier[s] of property" under the FAAAA. *City of Columbus v. Ours Garage & Wrecker Serv. Inc.*, 536 U.S. 424, 430 (2002).

In the district court, the Wares argued that all of their claims were saved from preemption because the claims were "separate and apart from any issue of non-consensual towing and do not relate to the price, route, or service." Pls' Resp. to Def.'s Mot. Summ. J. 20. The district court rejected the argument. The district court held that Plaintiffs' claims were preempted by § 14501(c)(1) because Plaintiffs' argument was not premised upon nonconsensual towing, but upon unauthorized *storage* charges and violations of Tennessee statutes regarding notice as to storage fees and sales. The district court observed "that Congress intended a broad statutory definition of

'transportation' to apply to § 14501, as reflected in the definition of "transportation" under the Act. *Ware*, 2007 WL 108885, at *11. Thus, in the district court's view, "to the extent that [the Wares] raise claims involving the storage of the vehicle, including storage charges, their claims are preempted by § 14501(c)(1)." *Id.* The district court also noted that the Wares did not argue that any of the exceptions applied, and that it therefore had no reason to address them. *Id.* at *8 n.11.

The Wares first claim–that Tow Pro illegally converted their truck by charging unlawful storage fees–is "related to" the price Tow Pro charges for the transportation of property, and thus preempted under § 14501(c)(1). Section 13102(23) of the Act defines "transportation" to include "services related to th[e] movement [of passengers and property], including . . . *storage,* handling, packing, unpacking, and interchange of passengers and property.'' (Emphasis added). *See also Ace Auto Body & Towing v. City of New York*, 171 F.3d 765, 771 (2d Cir. 1999). Because the statutory definition of "transportation" specifically includes "storage," the Wares' challenge based on unauthorized storage charges "relate[s] to [the] price . . . of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1).

The Wares' second claim–that Tow Pro converted the truck by failing to provide the Wares sufficient notice of the storage fees and sale–is also related to Tow Pro's prices and services and is similarly preempted by 49 U.S.C. §14510(c)(1). The Wares cite several Tennessee statutes to support their conversion claim on this ground, arguing that: (1) Section 55-16-112 of the Tennessee Code required Tow Pro to obtain express written authorization not only for the towing of the truck but also for the truck's storage, *see* Tenn. Code Ann. § 55-16-112 ("[I]n order for a garagekeeper or a towing firm to tow or store a vehicle the garagekeeper or towing firm shall obtain an express written authorization for towing and storage of each vehicle from a law enforcement officer . . .or from the owner . . . of the private property from which the vehicle is to be towed."); (2) Sections 55-

23-103 and -104 of the Tennessee Code prohibited Tow Pro's collection of storage fees for a period in excess of sixty days without the Wares' consent, *see* Tenn. Code Ann. § 55-23-103 ("Persons engaged in the business of towing motor vehicles . . . and the storing of such motor vehicles . . . shall not charge the owner or lienholder of any such motor vehicle a storage fee for a period exceeding sixty (60) days without the consent of [the] owner."); and (3) Section 66-19-103 of the Tennessee Code prohibited Tow Pro from collecting any storage or related fees unless certain circumstances were met, *see* Tenn. Code Ann. § 66-19-103 (setting forth the requirements for a "[g]aragekeeper's or towing firm's lien"). Because these claims relate on their face to the "transportation of property," namely prices and services, the claims fall within § 14501(c)'s preemptive reach. Thus, the district court's ruling, set within the parameters of the Wares' argument in the district court, is clearly correct in light of the plain language of the statute and the Supreme Court's ruling in *Rowe,* absent a statutory exemption from preemption.

The Wares argue for the first time on appeal that their claims should be exempted from preemption under § 14501(c)(2)(C). *See* Appellant's Br. at 30 (citing § 14501(c)(2)(C) and *Ours Garage*, 536 U.S. 424). That exception exempts from preemption state laws "relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle." 49 U.S.C. § 14501(c)(2)(C).

Because the Wares did not raise this argument below, they have as a general matter waived it on appeal. "It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *see also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008). Two main policies support this general rule. "First, the rule eases appellate review 'by having the district court first consider the issue.'" *Scottsdale*, 513

F.3d at 552 (quoting *Foster v. Barilow*, 6 F.3d 405, 409 (6th Cir.1993)). "'Second, the rule ensures fairness to litigants by preventing surprise issues from appearing on appeal.'" *Id.* (quoting *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)).

At the same time, this Court has "on occasion, deviated from the general rule in 'exceptional cases or particular circumstances' or when the rule would produce a 'plain miscarriage of justice.'" *Id.* (quoting *Foster*, 6 F.3d at 407 (quoting *Pinney Dock & Transport Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir.1988))). However, we rarely exercise such discretion, and instead focus on whether the issue was properly raised in the district court. *Scottsdale*, 513 F.3d at 552 (and citations therein); *see also In re Morris*, 260 F.3d 654, 664 (6th Cir. 2001) (stating that "the exceptions to the general rule are narrow and intended to promote finality in litigation").

Thus, in deciding whether to address an argument raised for the first time on appeal, this Court is guided by the following principles:

> First, we *may* deviate from the general rule [in]an exceptional case, if declining to review issues for the first time on appeal would produce a plain miscarriage of justice, or if this appeal presents a "particular circumstance" warranting departure. We also *may* hear an issue for the first time on appeal if doing so would serve an overarching purpose other than simply reaching the correct result in [the] case. Finally, we *should* address an issue presented with sufficient clarity and requiring no factual development if doing so would promote the finality of litigation in [the] case.

*Id.*

Both of the policies underlying the general rule apply here, and none of the concerns articulated in *Morris* justify deviating from the general rule in this case. First, it cannot be said that a plain miscarriage of justice would result: the Wares, by their own admissions, were not particularly diligent in protecting their interest in the truck, and Tow Pro did not act without giving the Wares notice that it intended to sell the truck. Furthermore, there is nothing in the record to indicate that Tow Pro would have withheld the truck had the Wares been forthcoming with an appropriate

payment of fees. Second, although the question of whether the nonconsensual towing exemption saves the Wares' claims from preemption does not seem to require extensive factual development, *see Semaan v. Allied Supermarkets, Inc. (In re Allied Supermarkets, Inc.)*, 951 F.2d 718, 725-26 (6th Cir. 1991) (considering issue raised for the first time on appeal because it involved a question of law that required no additional factual development), it involves difficult issues of federal preemption as well as statutory interpretation. *Cf. Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 930 (9th Cir. 2003) (declining, in the absence of argument, to "pick through" the FAAAA in order to match the statutes and regulations with a preemption theory that the parties did not articulate to the court); *Tow Operators Working to Protect Their Rights v. City of Kansas City*, 338 F.3d 873, 876 (8th Cir. 2003)(declining to reach argument asserting that ordinance did not fall within FAAAA's safety exception because the tow operators failed to raise the issue in the district court). Third, resolution of the issue would not promote finality in litigation were the Wares to prevail in this argument.

Thus, we conclude that this case does not warrant the exercise of our discretion to address a complex federal preemption question that was raised for the first time, in a perfunctory manner, on appeal. We therefore affirm the district court's ruling that Wares' first and second claims are preempted under §14501(c)(1).

We finally consider whether the district court properly dismissed the Wares' third claim–that Tow Pro's continued negotiations with the Wares after the company sold the truck violated the TCPA. The district court found this issue presented a closer preemption question, but ultimately decided that the claim did not involve "trade or commerce" as defined under the TCPA, and that the Wares had otherwise failed to state a cognizable TCPA claim. We affirm the district court's ruling based on its alternative holding that the Wares failed to create a genuine issue of material fact necessary to establish that Tow Pro's actions were deceptive and that they suffered damages. First,

the Wares did not create a factual issue supporting their theory that Tow Pro's negotiations were deceptive. The truck was in the possession of either Tow Pro or its president at all times. As the district court observed, "if [the Wares] and [Tow Pro] had reached agreement upon an appropriate payment of fees, it is difficult to believe that [the Wares] could not have obtained the truck from its President." *Ware,* 2007 WL 108885, at *15 n.13. Further, as the district court held, the Wares failed to allege that they suffered any damages as a result of Tow Pro's allegedly deceptive negotiating practices. *See id* at * 15.

### III. Conclusion

For all of the foregoing reasons, the judgment of the district court is **AFFIRMED.**

GRIFFIN, Circuit Judge, concurring in part and dissenting in part.

I respectfully dissent from the majority's holding that plaintiffs' common law conversion claim is preempted by federal law. In all other respects, I concur.

In my view, 49 U.S.C. § 14501(c) does not preempt plaintiffs' common law claim alleging excessive and unauthorized vehicle storage fees arising out of the non-consensual towing of plaintiffs' truck. Because I conclude that federal preemption does not apply, I would reverse and remand for further proceedings relating to plaintiffs' conversion claim.

At issue is 49 U.S.C. § 14501(c), which provides, in relevant part, as follows:

**(c) Motor carriers of property**

**(1) General rule**. Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

**(2) Matters not covered**. Paragraph (1)

(A) shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization;

(B) does not apply to the intrastate transportation of household goods; and

(C) does not apply to the authority of a State or a political subdivision of a State to enact or enforce a law, regulation, or other provision *relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle.*

(Emphasis added.)

-11-

I agree with the majority that because plaintiffs did not raise the non-consensual towing exception in the district court, the applicability of the exception is not preserved for appeal. Nonetheless, in ascertaining the meaning of the text of § 14501(c), the statutory language must be considered as a whole and in context. *United States v. Atlantic Research Corp.*, 127 S. Ct. 2331, 2336 (2007) (citing *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991)). It is clear that, pursuant to § 14501(C)(2)(c), Congress did not preempt state laws relating to the non-consensual towing of vehicles. However, under the majority's construction, Congress preempted state laws regarding the storage, impound, and administrative fees charged for such a towed vehicle. In my view, such an anomalous result is contrary to the plain meaning of the statute as a whole.

It is well settled that tow trucks are "motor carriers of property." *City of Columbus v. Ours Garage and Wrecker Serv., Inc.*, 536 U.S. 424, 430 (2002). Further, the statute defines "transportation" as:

> (A) a motor vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, regardless of ownership or an agreement concerning use; and
>
> (B) services related to that movement, including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property.

49 U.S.C. § 13102(23).

Because the definition of "transportation" specifically includes "storage," the majority concludes that the Wares' conversion claim is related to the price of a motor carrier with respect to the "transportation of property" and is therefore preempted. I disagree and find this argument flawed in several respects.

-12-

First, because the term "storage" is not defined in the statute, the plain meaning of the statutory text must be ascertained and implemented. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296-97 (2006). When the meaning of a term is ambiguous, we should employ established canons of statutory construction. *Cf. United States v. Monsanto*, 491 U.S. 600, 611 (1989). Under the familiar canon of statutory interpretation, *noscitur a sociis* ("it is known by its companions"), a term is "given more precise content by the neighboring words with which it is associated." *United States v. Williams*, 128 S. Ct. 1830, 1839 (2008); *United States v. Ossa-Gallegos*, 491 F.3d 537, 540 (6th Cir. 2007) (en banc). Here, "storage," and its sister terms "receipt," "delivery," "elevation," "transfer in transit," "refrigeration," "icing," "ventilation," "handling," "packing," "unpacking," and "interchange," reasonably read, refer to the *cargo* transported in the channels of commerce, rather than the truck transporting them. Trucks are not "handled" or "transferred in transit" and, although they often carry refrigerated cargo, or a refrigerated trailer, they are not themselves the subject of refrigeration. I therefore do not construe the term "storage" as encompassing storage of anything beyond merchandise in transit. To conclude that the Act includes storage of plaintiffs' non-functioning truck requires a tortured reading of the surrounding terms of the statute.

Moreover, 49 U.S.C. § 13102(23)(B) refers to "storage" as a "service[] related to [the] movement . . . of passengers and property." Storage of freight is a likely event during the cargo's journey from manufacturer to marketplace. Goods may be temporarily stored at a warehouse or waypoint as part of transferring cargo from one truck, or company, to another. Thus, "storage" of such goods lies at the heart of "movement of property." Here, by contrast, plaintiffs' truck ceased to be involved in transport activities several months before its eventual impound. As a non-

operational truck is not engaged in the transport of passengers or property, storage of the same is not related to the movement of passengers and property and therefore does not fit within the four corners of § 13102(23)(B). Because I construe "storage" as applying to the freight and cargo transported, not to storage of the truck itself, I respectfully dissent.

For these reasons, I concur in part and dissent in part. I would remand for further proceedings regarding plaintiffs' common law conversion claim.