In the Matter of Willie Fred
THOMAS, Debtor.

The CITIZENS & SOUTHERN
NATIONAL BANK, Plaintiff,

v.

Willie Fred THOMAS, Defendant.

Bankruptcy No. 80–00181A.
Adv. No. 80–0188A.

United States Bankruptcy Court,
N. D. Georgia.

July 10, 1981.

John J. Goger, Arrington, Rubin, Winter, Krischer & Gager, Atlanta, Ga., for plaintiff.

Robert S. Whitelaw, Atlanta, Ga., for defendant.

## OPINION

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

This adversary proceeding has been brought by The Citizens & Southern National Bank (C&S) to seek determination of the dischargeability of a debt of $5,096.23 owed by Defendant Willie Fred Thomas (Thomas) to Plaintiff. The debt is secured by an automobile. Thomas obtained an automobile loan from C&S on or about September 6, 1978. C&S alleges that Thomas orally informed the bank at the time he executed the loan that he had comprehensive and collision automobile insurance coverage which named C&S as payee of the insurance policy. C&S contends that such coverage was required by C&S as a precondition to making all automobile loans. Within two months after the loan was made the car was totally destroyed. No insurance had ever been obtained. Thomas filed a voluntary Chapter 7 petition on January 21, 1980.

## FINDINGS OF FACT

On or about September 5, 1978, Thomas applied for an automobile loan with Ms. Judy Brewer, an officer and the Manager of one of the branch offices of C&S. At the time that Ms. Brewer accepted Thomas' loan application, she advised him that comprehensive and collision automobile insurance coverage, naming C&S as loss payee, would be required as a condition to making the loan. Thomas responded that in the event his loan application was approved, he would have the necessary insurance cover-

age when he returned to sign the loan documents. Later that day Ms. Brewer informed Thomas that his loan application had been approved.

On September 6, 1978, Thomas returned to the branch office of C&S and executed the loan documents. He informed Ms. Lynn McCamey, a customer service representative who had prepared the loan documents at the direction of Ms. Brewer, that he had obtained comprehensive and collision insurance coverage with a specific insurance company through the Roy Lunsford Insurance Agency. Ms. McCamey recorded this insurance coverage on the note at that time. Ms. McCamey closed the loan and forwarded the loan documents to an operations center of C&S which had responsibility for obtaining the certificate of title to the automobile and for verifying Thomas' insurance coverage. On the same day, Thomas purchased a 1978 Oldsmobile Delta Royale automobile.

The insurance verification procedure for automobile loans is initiated at the operations center of C&S. In those cases where the center is unable to verify insurance coverage, it refers the matter back to the branch office for follow-up with the customer and, if necessary, the insurance agency involved. The operations center advised Ms. Brewer and Ms. McCamey in late October, 1978, that it had been unable to verify insurance coverage for Thomas. Upon being advised of this fact, Ms. Brewer as Branch Manager referred follow-up on the account to Ms. McCamey. Ms. McCamey contacted Thomas some time in late October or early November and was advised by him that he had obtained the necessary insurance coverage in the name of his sister

through the Roy Lunsford Insurance Agency.

Ms. McCamey contacted the insurance agency and was unable to verify insurance coverage on Thomas' automobile in the name of either Thomas or 'his sister. On November 14, 1978, Ms. McCamey again contacted Thomas concerning his insurance coverage. He thereupon informed her that the vehicle had been totally destroyed on November 9, 1978, and, further, that he had not obtained insurance coverage of any sort at any time for the vehicle.

## CONCLUSIONS OF LAW

The Plaintiff's cause of action is based on § 523(a)(2)(A)[1] of the Bankruptcy Code which provides:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

(2) for obtaining money, property or services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, ...

C&S contends that the oral statements of Thomas enabling him to obtain credit and his failure to inform the Bank of his DUI conviction amounted to false pretenses and false representations within the meaning of the Bankruptcy Code.

Section 523(a)(2)(A) is derived from § 17(a) of the Bankruptcy Act[2] which listed certain debts not affected by a discharge, including "(2) ... liabilities for obtaining money or property by false pretenses or false representations ...."[3] The

---

1. 11 U.S.C. § 523(a)(2)(A) (1980).

2. 11 U.S.C. § 35(a)(2) (repealed 1978).

3. "[T]he phrase 'false pretenses or false representation' ... has been a part of Section 17 since the Bankruptcy Act of 1898, ... the section was derived from a parallel provision in the Bankruptcy Act of 1867 ... providing that debts created by fraud were not dischargeable." *Wright v. Lubinko*, 515 F.2d 260, 264 (9th Cir. 1975). An argument has been made that Congress intended to distinguish between

false pretenses and false representations. "In deliberately chosen words the Congress indicates a difference between false pretenses and false representations. The latter may appropriately mean express misrepresentations. 'False pretenses' more appropriately refer to implied representations, or conduct intended to create and foster a false impression. In both cases of course an intended deceit is essential." *Davison-Paxon Co. v. Caldwell*, 115 F.2d 189, 193 (5th Cir. 1940) (Sibley, J., dissenting). *Cert.*

Code provision added the phrase "or actual fraud" to the prior terminology.

"Actual fraud" is defined as any deceit, artifice, trick [or] design ... it includes cases of the intentional and successful employment of any cunning, deception, or artifice' used to circumvent or cheat another. It is something said, done, or omitted by a person with the design of perpetrating that he knows to be a cheat or deception.[4]

The legislative history is not precise as to whether the addition of the phrase "or actual fraud" provides a new basis for exception from discharge,[5] or whether this language was intended merely to clarify the existing law.[6] One thing is clear, however. The courts have consistently held that in order for § 17(a)(2) to bar the discharge of a debt the plaintiff must prove actual or positive fraud. *Abbott v. Regents of the University of California*, 516 F.2d 830 (9th Cir. 1975); *Wright v. Lubinko*, 515 F.2d 260 (9th Cir. 1975). The legislative history of § 523(a)(2)(A) indicates that Congress intended that fraud which will exempt a debt from discharge in bankruptcy must be, as under current case law, "positive fraud, or fraud in fact, involving moral turpitude or intentional wrong ... and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality." *Neal v. Clark*, 95 U.S. 704, 709, 24 L.Ed. 586 (1877).[7]

■ Fraud may consist of concealment or intentional nondisclosure as well as affirmative misrepresentation of material facts. *In re Harris*, 458 F.Supp. 238 (D.Ore. 1976), 587 F.2d 451 (9th Cir. 1978), *cert. denied*, 442 U.S. 918, 99 S.Ct. 2840, 61 L.Ed.2d 285 (1979); *In re Black*, 373 F.Supp. 105 (E.D.Wis.1974); *In re Bebar*, 315 F.Supp. 841 (E.D.N.Y.1970). *See Abbott v. Regents of the University of California, supra.* A debtor's silence may amount to a materially false representation prohibiting discharge of the indebtedness. *Michigan National Bank v. Marston*, 29 Mich. App. 99, 185 N.W.2d 47 (1970). *See Abbott v. Regents of University of California, supra; In the Matter of Taylor*, 514 F.2d 1370, 1373 (9th Cir. 1975).[8]

■ The party alleging nondischargeability of the debt under Section 523(a)(2)(A) must prove all of the elements of positive fraud incident to the creation of the debt. "There are 5 basic elements to be proven by the objecting party in order to obtain an adjudication of nondischargeability: (1) the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made." *In re Nelson*, 561 F.2d 1342 (9th Cir., 1977), quoting *Sweet v. Ritter Finance Co.*, 263 F.Supp. 540, 543 (W.D.Va.1967). "The alleged fraudulent representations must have been made with an intent to

---

denied, 313 U.S. 564, 61 S.Ct. 841, 85 L.Ed. 1523 (1941).

4. Black's Law Dictionary (5th ed. 1979).

5. "This [§ 523(a)(2)(A)] provision is modified only slightly from current section 17a(2).... [A]ctual fraud is added as a ground for exception from discharge." S.Rep. 95–989, 95th Cong., 2nd Sess. 78 (1978); H.Rep. 95–595, 95th Cong., 1st Sess. 364 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5864, 6320.

6. "Subparagraph A is intended to codify current case law which interprets fraud to mean actual or positive fraud rather than fraud implied in law." 124 Cong.Rec. H 11,096 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards);

124 Cong.Rec. S 17,412 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini). The statement of congressional leaders are the last expressions of congressional intent and therefore represent the more reliable construction to be placed on new § 523(a)(2)(A).

7. *Id.*

8. One court has held that "false pretenses" and "false representations" must be overt rather than implied. *Davison-Paxon Co. v. Caldwell*, 115 F.2d 189 (5th Cir. 1940), *cert. denied*, 313 U.S. 564, 61 S.Ct. 841, 85 L.Ed. 1523 (1941). In this regard, this case has not been generally followed. *See In re Black*, 373 F.Supp. 105 (E.D.Wis.1974).

deceive and defraud, and the creditor must have relied on the representations in acting to his prejudice." *In re Dolnick*, 374 F.Supp. 84, 90 (N.D.Ill.1974). *In re Falk of Bethlehem*, 3 B.R. 266 (Bkrtcy. D.N.J.1980). See *In re Nichols*, 6 B.R. 842 (Bkrtcy.D.Me. 1980).

"The ultimate facts required to make ... [§ 523(a)(2)(A)] operative must ... be inferred in most instances ... since they involve a conclusion as to the state of mind of the maker of the representation." *In re Falk of Bethlehem, supra.*

Thomas contends that he never made any representation to the employees of C&S regarding insurance coverage other than informing them that he would attempt to obtain such coverage at some time in the future. Thomas' testimony lacks credibility. Both witnesses for C&S testified that automobile loans would not be made under any circumstances where the customer failed to represent that the vehicle was subject to comprehensive and collision insurance coverage or failed to provide the name of the insurance agency and company. Ms. McCamey recorded on the note, signed by Thomas, that the vehicle was the subject of insurance coverage by State Farm Insurance Company through the Roy Lunsford Insurance Agency. This notation, made at the time of the execution of the promissory note fortifies her testimony and contradicts Thomas' testimony that he had informed Ms. McCamey only that he would obtain the necessary insurance coverage at some time in the future.

On cross-examination, Thomas asserted that after obtaining the loan, he applied for insurance coverage at the Roy Lunsford Agency and several other agencies but each time his application was denied due to a prior conviction for driving an automobile while under the influence of alcohol. This conviction preceded by several years the C&S loan now at issue. This conviction was not disclosed to or known by C&S.

 The Court finds that Thomas knew at the time that he executed the loan documents and the extension of the loan of his inability to obtain automobile insurance except at a premium cost. The Court further finds that Thomas concealed this fact from C&S and that he pretended and intentionally made oral representations [9] to C&S that he had the necessary insurance coverage at the time he obtained the loan. The Court also finds that Thomas knew at that time that his pretenses and representations were false and that he had no intention of obtaining the necessary insurance coverage. Thomas never obtained any insurance coverage on the vehicle and, when subsequently contacted by an employee of C&S, he failed to advise C&S of the absence of insurance or of the denial of his insurance application with the insurance agency. Instead, Thomas represented to C&S that he

---

9. While the argument has been made that Congress intended to distinguish between "false pretenses" and "false representations" i. e.: the former being passive and the latter including some oral expression (see fn. 3), such distinction has not been followed. More likely the two terms are merely slight variations of the same wrongful act, both terms requiring an intended deceit, a positive fraud.

A false pretense may well be a passive posture, an expressed or manifest attitude which is assumed to mislead the damaged party. It may be a mute charade to express the attitude; that is, it may be conduct designed to convey an impression without oral expression.

*The Synonym Finder*, J. I. Rodale, Rodale Books, Inc. (6th ed. 1967), lists terms closely related to pretense to be:

*Pretense, n.* 1. Show, false appearance, semblance, mask, deception, cloak, color, coloration, window dressing, surface, affectation, simulation, imitation, mimicry, veiling, tinsel, mummery, varnish, veneer, feint, subterfuge, gloss, cover, empty show . . . .

On the other hand, a false representation may most frequently be a verbal expression. *The Synonym Finder, supra,* lists terms closely related to representation to be:

*Representation, n.* 5. Assertion of facts, critical assertion, narration, account, description, relation, statement, narrative, recitative, expression, report, record, recital, explanation, rehearsal, asseveration, declaration.

Yet, a passive commission or omission, without oral expression, may constitute a representation. *The Synonym Finder, supra,* lists terms closely related to representation to be:

*Representation, n.* 3. Personification, impersonation, personation, simulation, portrayal, dramatic performance, acting, rendition, stagecraft, stage business.

had obtained the insurance coverage in his sister's name. His failure to obtain insurance coverage and his failure to inform C&S of the fact that he had no coverage support a finding that Thomas never had any intention of obtaining such insurance and satisfies the Court that he obtained the loan through false representations and false pretenses amounting to actual fraud.

The burden of proof which is upon the moving party [10] has been carried by the plaintiff as to all of the elements of actual fraud.

 The Court finds that the defendant's false pretenses and false oral representations were material and were relied upon by C&S in its decision to make the loan. It was reasonable for C&S to rely on these representations, albeit it would have been better procedure to require proof of insurance prior to the execution of the loan documents. The risk for which the insurance was required by C&S occurred, and the failure of Thomas to have insurance coverage in effect was the proximate cause of the loss of C&S. By these pretenses and representations and its reliance thereon, C&S has been damaged to the extent of the unpaid amount of the debt.

In sum, Thomas obtained his automobile loan from C&S by knowingly and willfully making the false representation that he had the necessary automobile insurance required by the bank as a precondition to the loan and by failing to inform C&S of his prior conviction for driving under the influence of alcohol, which he knew would render him virtually uninsurable. His subsequent actions simply reinforce the conclusion that his deceit was deliberate and intentional. But for his deliberate and intentional deceit there would have been no approval of the loan which created the debt to C&S. The unpaid indebtedness of Thomas to C&S now is in the amount of $5,096.23 [11] must be and is, therefore, determined to be

---

**10.** Bankruptcy Rule 407. See also H.R.Rep. No. 95–595, 95th Cong., 1st Sess., re H.R. 8200, 1977, at 308.

**11.** It is not the amount of the original contract debt which is nondischargeable. It is the dam-

nondischargeable under 11 U.S.C. § 523(a)(2)(A).

IT IS SO ORDERED.

age to the plaintiff caused by the fraud which is nondischargeable; that is, the amount remaining unpaid at the time of trial of adversary proceeding.