In re Kirk MONTGOMERY dba K.M. Employee Benefits Services, Debtor.

Santa Ana Unified School District, Plaintiff,

v.

Kirk Montgomery dba K.M. Employee Benefits Services, Defendant.

Bankruptcy No. 11–82598–MGD.
Adversary No. 12–05109.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

March 28, 2013.

**614**

Bryan E. Bates, Gary W. Marsh, McKenna Long & Aldridge, LLP, Atlanta, GA, for Plaintiff.

Joycelyn R. Curry, J. Curry Law Group, LLC, Atlanta, GA, for Defendant.

### ORDER GRANTING PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT

MARY GRACE DIEHL, Bankruptcy Judge.

This action involves a consulting contract between a California school district and Debtor, in his capacity as a benefits specialist. The contract and other related causes of action between the parties were litigated in the California Superior Court, resulting in a judgment against debtor for $2 million(excluding interest and costs).

The school district now seeks a determination that its judgment debt is nondischargeable. Additionally, the school district seeks a determination that a portion of Debtor's claimed exemptions, in the form of IRA accounts, are not property of the estate due to a constructive trust imposed upon funds as a result of the California Superior Court order and judgment. Debtor opposes the School District's claims and argues against any application of collateral estoppel or constructive trust.

Plaintiff Santa Ana Unified School District ("School District") filed two motions for partial summary judgment. The first motion seeks a determination that its judgment debt is nondischargeable under §§ 523(a)(2)(A) and (a)(6). (Docket No. 7). The second motion seeks a declaratory judgment on Count III of its Complaint. (Docket No. 34). Count III requests a determination that $1,266,794 held in Debtor's IRA accounts is not property of the estate due to a constructive trust on the property for which School District is the beneficiary. The two Summary Judgment Motions address all counts in School District's complaint.

As to the Motion regarding non-dischargeability, Debtor filed a Response in opposition and brief in support, in addition to Debtor's affidavit, Exhibits in support of the brief, and statement of facts. (Docket Nos. 17–19 & 21).[1] School District filed a Reply. (Docket No. 22). School District relies on its first Statement of Material Facts (Docket No. 8); the June 11, 2012 Affidavit of Michael Bishop, as Deputy Superintendent of the Santa Ana Unified School District (Docket No. 9); Debtor's responses to Requests for Admissions (Docket No. 10); the case record, including the Final Judgment of the Superior Court

---

1. School District urges the Court to find Debtor's Response untimely under Local Rule 7007–1(c). The Court uses its discretion to consider all of Debtor's responsive pleadings. Based on the ruling, the timeliness of Debtor's response is irrelevant.

of California, County of Riverside, which is attached to the Complaint.

As to the second motion seeking a declaratory judgment regarding that certain funds in Debtor's IRA accounts are not property of the estate, School District relies on its second Statement of Material Facts (Docket No. 35), discovery responses, including the October 9, 2012 Deposition of Defendant Kirk Montgomery (Docket No. 38, Exhibit F); the Affidavit of Michael Bishop, Deputy Superintendent for School District; and the case record. Debtor filed a Response in opposition to the Motion and brief in support (Docket No. 43), response to the statement of undisputed facts (Docket No. 41), Affidavit of Debtor (Docket No. 40), and an amended Response (Docket No. 46). School District filed a Reply. (Docket No. 44).

For the reasons set forth below, School District has met its burden that no material facts are in genuine dispute and it is entitled to judgment that (1) the judgment debt is non-dischargeable and that (2) the identified $1,266,794 monies in Debtor's IRA accounts are not property of the estate because a constructive trust was imposed upon such funds for the benefit of School District. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), and (O), and jurisdiction over this action is set forth in 28 U.S.C. §§ 157(b) and 1334(b).

## I. Facts

Debtor filed chapter 7 bankruptcy on November 10, 2011. (Case No. 11–82598–MGD). Chapter 7 Trustee, Robert Silliman, filed a no asset report on January 13, 2012. (Case No. 11–82598; Docket No. 10.) No discharge has been entered for Debtor. Debtor's Schedule C exemptions lists three IRA accounts: (1) Pacific Life ($794,368.12), (2) Western Reserve Life ($553,046.61), and (3) SEI ($255,378.95).

Debtor later filed amended exemptions, yet the IRA accounts and amounts remained the same. (Case No. 11–82598; Docket No. 36).

Plaintiff School District exists under the laws of the state of California. (Docket No. 8, *Plaintiff's Statement of Material Facts ("SOF")*, ¶ 1). School District is a creditor of Kirk Montgomery ("Debtor"), *dba* K.M. Employee Benefits Services, evidenced by a judgment in the Superior Court of California, County of Riverside ("California Superior Court"). *Id.* at ¶ 4. Debtor included his debt to School District as an unsecured, non-priority liability in the amount of $3,023,767.56 on Schedule F of his bankruptcy schedules. *Id.* at ¶ 7.

The relationship between the parties began in July of 2000. School District issued a request for proposals to consultants in regard to its employee benefits plan, seeking assistance with the negotiation of rates and services with insurance carriers and administrators. *Id.* at ¶ 9. School District stated in its request that it would pay all compensation for services; consultants were not to receive compensation, fees, or commissions from carriers. *Id.* at ¶ 10; Debtor's Contested Matter Admissions ("*Admissions*"), ¶ 4. Debtor submitted a proposal to School District in August of 2000. *Id.* at ¶ 12; Exhibit C to Complaint ("*Debtor's Proposal*"). Debtor's proposal included: "All compensation for services [would] be paid by the District with no compensation, fees, or commissions received by the consultant/broker from carriers or administrators." *Id.* at ¶ 15; *Debtor's Proposal.* Debtor further represented that: "Certain carriers have as part of the underwriting process, built-in commissions that are not removed from the rating formula. In these cases, we are willing to remit any commissions, overrides, or other carrier compensation to Santa Ana Unified

School District to 100% of the total fee." *Id.* at ¶ 16; *Debtor's Proposal.*

Debtor was approved and appointed as School District's employee benefits consultant on October 10, 2000. *Id.* at ¶ 18. Debtor and School District executed the Employee Benefit Consultant Service Agreement ("Agreement") sometime between November 2000 and the end of that calendar year. *Id.* at ¶ 19; *Admissions,* ¶ 15. The term under the Agreement began on November 1, 2000. *SOF,* ¶ 17; Exhibit D to Complaint ("*Agreement* "). Section 3 of the Agreement provided:

> As per Consultant's [Debtor's] formal proposal dated August 18, 2000, the District [Plaintiff] will be required to pay $60,0000.00 per each contract year beginning November 1, 2000 and ending October 31, 2003, subject to annual review. Payment to be made monthly at the rate of $5,000.00 per month. All parties agree that certain carriers have as part of their underwriting process, built-in commissions that are not removed from the rating formula. In these cases, the Consultant [Debtor] will remit any commissions, overrides or other carrier compensation to the District [Plaintiff] to One Hundred Percent (100%) of the total fee.

*Agreement,* ¶ 3. School District wrote a letter dated October 27, 2000 advising of Debtor's November 1, 2000 retention and defining the scope of Debtor's work, as agent for School District. *Debtor's* Exhibit D ("*Debtor's Responsive Exhibits* "); Docket No. 21. The recipient of the letter is unknown. This letter also authorized Debtor to negotiate on behalf of School District on all matters relating to group insurance and employee benefits. *Id.* This same letter directs carriers to make commissions payable to Debtor. Docket No. 21, Exhibit D.

In early 2001, Debtor made requests for proposals ("RFPs") to various insurance carriers. *Montgomery Affidavit,* ¶ 18 (Docket No. 18). The RFPs instructed each insurance carrier to add commissions into the quotes at the following rates: Medical 5% flat; Dental 10% flat; Vision 10% flat, and Life 10% flat. *Id.* at ¶ 18; Exhibit E to Complaint (*Kirk Montgomery Employee Benefits Service RFP "KMEBS RFP "*). This instruction was provided in the "Specifications" section of the RFP, along with other requirements. *Id.* Accordingly, Blue Cross added in a 5% Medical charge to the quotes in its proposal and 10% Dental charge. *Id.* at ¶ 20; Exhibit F to Complaint ("*Blue Cross Proposal* "). Blue Cross's proposal identified these commission rates "as specified in the RFP." *Blue Cross Proposal,* p. 11.

A few months later, Debtor recommended that School District switch from a self-funded insurance program to a fully funded program with Blue Cross. *SOF,* ¶ 35; *Montgomery Affidavit* ¶ 22. In August 2001, Plaintiff changed to a fully funded program with Blue Cross. *SOF* at ¶ 42. School District realized significant savings—estimated to lower premium payment obligation by $2 million—as a result of the switch recommended by Debtor. *Montgomery Affidavit,* ¶ 23.

Each Blue Cross renewal of the insurance policy included a 5% commission, which was designated in its own line item. *Bishop Affidavit,* ¶ 23; Exhibits G & H to Complaint ("*Blue Cross Renewals* "). Debtor sent School District renewal spreadsheets that were modified from the Blue Cross renewal form. *Montgomery Affidavit* ¶ 24; Exhibits I & J to Complaint ("*KM Renewal Reports* ").

Debtor's renewal report included all line items from Blue Cross with the exception of the commissions line item. *Blue Cross Renewals; KM Renewal Reports.* Debt-

or's renewal submitted to School District combined the "Commissions" figure with the "Retention" figure, with the resulting sum listed on the "Retention" line. *Id.; Bishop Affidavit* ¶¶ 24–26. The 2002 renewal from Blue Cross to Debtor, the commission line item was $1,039,854 and the retention line item was $1,079,500. *2002 Blue Cross Renewal;* Exhibit G to Complaint. Debtor sent School District 2002 renewal information entitled "Refunding Calculation" that includes each line item from the Blue Cross renewal with the exception of commission. *2002 Blue Cross Renewal; 2002 KM Renewal Report.* In the information sent to School District by Plaintiff, the Retention line item totaled $2,119,353. *2002 KM Renewal Report;* Exhibit I to Complaint. Similarly, the 2003 Blue Cross renewal to Debtor included a commission line item in the amount of $1,301,961 and a $1,259,824 retention line item. *2003 Blue Cross Renewal.* Debtor provided School District renewal information that did not include a commission line item, and the first offer retention line item totaled $2,561,784 with a final offer column showing $2,453,415 for retention. *2003 KM Renewal Report.*

During the term and renewed terms of the Agreement, Debtor remitted to School District certain commissions from other insurance carriers. *Montgomery Affidavit,* ¶ 26; Exhibit K to Complaint (*"Remitted Commission Checks"*). Debtor did not inform School District of the Blue Cross commission. *SOF* ¶ 57; *Bishop Affidavit,* ¶ 28. The term of the Agreement between the parties was renewed in August of 2002. *Bishop Affidavit,* ¶ 29.

Defendant made several contributions to his pension plan from 2001 to 2003. Docket No. 48; *Deposition of Kirk Montgomery (*"Montgomery Deposition"*),* p. 83. In 2001, Debtor contributed the sum of $211,739.00; in 2002, Debtor contributed the sum of $472,180.00; and in 2003, Debtor contributed the sum of $582,875.00. These sums totaled $1,266,794.00. *Id.* Debtor's contributions to his pension plans were composed, at least in part, of the commissions he received from Blue Cross. *Id.* at 81–83. Between the years of 2002 and 2004, Debtor deposited these same sums into defined benefits pension plans with Pacific Life Insurance Company ($211,739.00), Western Reserve Life ($472,180.00), and American Funds ($582,-875.00). *Id.* at p. 87. In 2004, Defendant rolled over these investments into his IRA accounts. *Id.* at p. 89.

In November of 2003, School District requested information from Blue Cross regarding the amount of commission included in the paid premium amounts. *Bishop Affidavit,* ¶ 30. Blue Cross provided School District with a letter on February 3, 2004 detailing the 2002 and 2003 commissions paid via the account premiums, noting that the commissions were based on 5% of the paid premiums. Exhibit L to Complaint (*"2004 Blue Cross Responsive Letter"*). The 2004 letter from Blue Cross revealed that over $3,500,000 in commissions had been paid by School District during 2001 through 2003. *Id.* The 2004 letter also provided a reduction to 2004 premium rates based on the elimination of commission. *Id.*

Plaintiff filed a complaint against Debtor in the California Superior Court on April 27, 2004. *SOF,* ¶ 65. On September 29, 2011, Plaintiff obtained a Final Judgment against Debtor in the California Superior Court. *Id.* at ¶ 4. Litigation against Debtor in the California Superior Court took the form of a trial in two phases. Exhibit A to Complaint (*California Superior Court Order and Judgment (*"Judgment"*))* [2].

---

**2.** Page citations to Exhibit A to the Complaint refer to the page number of the Exhibit as

Blue Cross of California served as plaintiff and School District served as a cross-complainant. *Id.* Pursuant to the California Superior Court's Final Judgment, Debtor is indebted to School District in the amount of $2 million plus interest[3] and costs. *SOF,* ¶ 6. The California Superior Court considered five separate counts against Debtor: (1) Breach of Contract, (2) Breach of Implied Covenant of Good Faith and Fair Dealing, (3) Breach of Fiduciary Duty, (4) Concealment, and (5) Constructive Trust. (Docket No. 21, Exhibit C ("*Second Amended Cross–Complaint* ")).

On February 17, 2011, the California Superior Court entered a Tentative Decision in favor of School District on the fourth and fifth counts of Concealment and Constructive Trust. *Judgment,* p. 11–23. On March 25, 2011, the Tentative Decision became the California Superior Court's Statement of Decision by operation of law. *Id.* at 10.

On the fourth count of Concealment, the California Superior Court found that Debtor disclosed some facts regarding the commissions, but "intentionally failed to disclose other important facts, thereby making such disclosure deceptive." *Id.* at 14. The Court also found that School District was unaware of the facts; that Debtor intentionally deceived School District by concealing facts; that School District reasonably relied on Debtor's deception; and that School District was harmed. *Id.* at 15.

As to the count of Constructive Trust, the California Superior Court imposed a constructive trust against Debtor and in favor of School District in the amount of $1,266,794. *Id.* at 17. Debtor held these funds in his defined benefits retirement account with EH Financial Group. *Id.* The California Superior Court found that at least the sum of $1,266,794 was "specific, identifiable property" wrongfully acquired by the Debtor and constituting an unjust enrichment. *Id.*

On the first count of Breach of Contract, the California Superior Court ruled that Debtor did not breach the contract with School District. *Id.* at 12. Rather, it found that the contract between School District and Debtor "imposed no legal duty on [Debtor] to disclose commissions to [his] client (the District) in excess of $60,000 pear year." *Id.*

Debtor disputes some facts. The discussion section will address whether these disputes are material and the impact they have on School District's Motions. The parties dispute several facts relating to whether and when School District knew of Debtor's Blue Cross commissions. Debtor reasons that the October 2000 letter from School District to unidentified recipients[4] confirms that School District knew Debtor was receiving commissions. *Montgomery Affidavit,* ¶ 28; Docket No. 21, p. 48 ("Exhibit D"). The October 2000 letter notifies that Debtor's firm is "appointed as the exclusive insurance consultant" for School District. *Exhibit D.* This letter also provides the scope of Debtor's firm's engagement to School District as "all matters relating to the [School District's] group insurance and employee benefits." *Id.* This letter also directs that all commis-

---

presented to this Court, not the page numbers on the California Superior Court documents.

**3.** California Superior Court determined pre-judgment interest in the amount of $997,643.16 and $26,124.40 in costs. *Judgment,* p. 5. The $2997,643.16 incurred post-

judgment interest at the rate of 10% per annum. *Id.* at 5–6.

**4.** Exhibit D has a received by Maria Jacobs stamp on the bottom but no recipient address block. It appears to be a form letter presumably sent to numerous recipients.

sions payable are to be directed to Debtor. *Id.*

Debtor also introduces facts that School District did not know of the Blue Cross commissions because the School District never inquired as to the Blue Cross commissions until late 2003, and that he was acting in accordance with the Agreement. *Montgomery Deposition,* p. 55. Debtor further asserts that commissions are standard in the industry and typically paid when authorized by the client, which was School District, here. *Montgomery Affidavit,* ¶¶ 25 & 29–30.

The parties also disagree as to whether Debtor instructed Blue Cross not to disclose the commissions. Debtor asserts that he merely told Blue Cross to have School District talk to him directly in late 2003, and School District asserts Debtor rebuffed its inquiry for the purpose of hiding the commissions. *Montgomery Deposition,* p. 52–56; *Bishop Affidavit,* ¶ 30. Debtor also disputes School District's characterization of his intent when he submitted the renewal tables to School District with the commission line item removed. Debtor asserts that it is industry standard to put proposals into your own forms and format. *Montgomery Affidavit,* ¶ 24. School District proposes that the purpose of the altered form was to conceal the commissions. *Bishop Affidavit,* ¶¶ 52–53.

School District asserts that Debtor failed to disclose the 5% commission in Blue Cross's premiums. *Id.* at ¶ 21(a). Debtor does not dispute this fact but asserts that he did not know that commissions were not built into the standard Blue Cross quote formulas. *Montgomery Affidavit,* ¶ 21.

## II. Summary Judgment Standard

In accordance with Rule 56 of the Federal Rules of Civil Procedure, applicable to this Court pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is appropriate only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). Material facts are those which might affect the outcome of a proceeding under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, a dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party has the burden of establishing the right to summary judgment. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991); *Clark v. Union Mut. Life Ins. Co.,* 692 F.2d 1370, 1372 (11th Cir.1982). Once this burden is met, the nonmoving party cannot rely merely on allegations or denials in its own pleadings. FED.R.CIV.P. 56(e). Rather, the nonmoving party must present specific facts that demonstrate there is a genuine dispute over material facts. *Hairston v. Gainesville Sun Pub. Co.,* 9 F.3d 913, 918 (11th Cir.1993). The "[o]ne who resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial." *Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir.2000); FED.R.CIV.P. 56(e).

In determining whether a genuine issue of material fact exists, the Court must view the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Rosen v. Biscayne Yacht & Country Club, Inc.,* 766 F.2d 482, 484 (11th Cir.1985). It remains the burden of the moving party to

establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. Discussion

Debtor asserts that material issues of fact remain as to the nondischargeability determination and as to whether identified funds in Debtor's IRA accounts should be excluded from the property of the estate. The Court disagrees. As discussed in more detail below and viewing the facts in favor of Debtor, School District has established sufficient undisputed, material facts regarding the nondischargeability of the debt under § 523(a)(2)(A) and the exclusion of Debtor's IRA accounts from property of the estate. Therefore, Debtor's argument that factual disputes serve as a basis to deny School District's Motions fails. Summary judgment is appropriate on both claims addressed below.

### A. Plaintiff Is Entitled to Apply the Doctrine of Collateral Estoppel to its Section 523(a)(2)(A) Claim.

In Counts I and II, School District seeks summary judgment as to the nondischargeability of the debt pursuant to 11 U.S.C. § 523(a)(2)(A) and (a)(6). School District asserts that the California Superior Court Final Judgment entitles it to a determination of non-dischargeability. Debtor opposes any application of issue preclusion. Debtor disputes the California Superior Court's factual findings. Debtor also argues that the claims resulting in judgment against Debtor in the prior action California Superior Court action are not identical to the dischargeability claims asserted in this action.

Issue preclusion, historically seen as collateral estoppel, precludes the re-litigation of the same issues between the same parties in different causes of action. *In re St. Laurent, II,* 991 F.2d 672, 675 (11th Cir.1993). Issue preclusion relies upon the findings of fact actually litigated in one lawsuit, and the effect of those findings upon subsequent litigation which involves a different cause of action but arising out of the same or virtually same nexus of operative facts. *Brown v. Felsen,* 442 U.S. 127 n. 10, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). "Section 1738 embodies concerns of comity and federalism that allow the States to determine, subject to the requirements of the statute and the Due Process Clause, the preclusive effect of judgments in their own courts." *Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). The doctrine of collateral estoppel is based on the efficient use of judicial resources and on a policy of discouraging parties from ignoring actions brought against them. *Gonzalez v. Moffitt,* 252 B.R. 916, 920 (6th Cir. BAP 2000).

"It is well-established that the doctrine of collateral estoppel applies in a discharge exception proceeding in bankruptcy court." *In re Bilzerian,* 100 F.3d 886, 892 (11th Cir.1996) (citing *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991); *Hoskins v. Yanks (In re Yanks),* 931 F.2d 42, 43 n. 1 (11th Cir.1991)). Relitigation in bankruptcy court of the issue decided by the state court would conflict with the principle of federalism that underlies the Full Faith and Credit Act. *In re Baldwin,* 249 F.3d 912, 920 (9th Cir.2001). "While collateral estoppel may bar a bankruptcy court from relitigating factual issues previously decided in state court, however, the ultimate issue of dischargeability is a legal question to be addressed by the bankruptcy court in the exercise of its exclusive jurisdiction to determine dischargeability." *Id.* (citing *In re Halpern,* 810 F.2d 1061, 1064 (11th Cir.1987)).

In reviewing whether a prior judgment ought to be given preclusive effect in a subsequent federal proceeding, the preclusion law of the state in which the judgment was rendered controls. *In re Baldwin,* 249 F.3d at 917; *Colo. W. Transp., Inc. v. McMahon,* 380 B.R. 911, 916 (N.D.Ga.2007) ("Pursuant to 28 U.S.C. § 1738, the judicial proceedings of any State are granted "the same full faith and credit" in federal court as they would receive in the State's courts."); *In re Lowery,* 440 B.R. 914, 924 (Bankr.N.D.Ga. 2010). School District's ability to use the doctrine of collateral estoppel will be assessed under California law, which sets out five threshold requirements:

> First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

*In re Baldwin,* 249 F.3d at 917–18 (quoting *Lucido v. Superior Court,* 51 Cal.3d 335, 341, 272 Cal.Rptr. 767, 795 P.2d 1223 (Cal.1990)).

**1. School District Seeks to Preclude Relitigation of Identical Issues Determined in the California Superior Court.**

In this case, the first threshold requirement—identical issues—demands particular attention. Debtor contests School District's use of issue preclusion because the prior adjudication is not identical to the non-dischargeability claims in this case. The standard for determining identity of issues is whether the issues in a

bankruptcy proceedingly "closely mirror" issues determined in the prior case. *In re Moir,* 291 B.R. 887, 891–92 (Bankr.S.D.Ga. 2003). Do the elements of a § 523(a)(2)(A) claim line up with the elements of the California state law claim of concealment or deceit?

First, two preliminary matters raised by the Debtor in opposition to the use of collateral estoppel will be addressed. Debtor challenges the identity of issues requirement on two broad bases. First, Debtor correctly asserts that the prior litigation did not include bankruptcy issues. (Docket No. 17 (*"Debtor's Responsive Brief"*); p. 7). The caselaw, however, explicitly addresses Debtor's argument. Claims that are germane to the Bankruptcy Code—including discharge and dischargeability claims—could not arise in state law proceedings. Instead of eliminating use of the preclusion doctrine, bankruptcy courts look beyond the state court claim or cause of action and compare the elements of the claims in which judgment was rendered to the requisite elements of the claims arising in the Bankruptcy Code and apply the factual findings to a bankruptcy-based cause of action. *Grogan v. Garner,* 498 U.S. at 284, 111 S.Ct. 654; *In re St. Laurent,* 991 F.2d at 676.

Second, Debtor challenges School District's ability to use issue preclusion based on the legal standard used by the California Superior Court. (*Debtor's Responsive Brief,* p. 8). Debtor argues that there is not identity of issues because the California Superior Court did not apply the common law tort of concealment but, instead, relied upon statutory deceit under California Code Section § 1710. *Id.* The name of the claim determined by the California Superior Court is not relevant, here. Instead, this Court will consider whether

Debtor is barred from relitigating identical factual issues in these claims. *See In re Baldwin*, 249 F.3d at 920.

■■■■■■ The Superior Court rendered a judgment against Debtor for the tort of concealment or deceit. Under California law, a claim of concealment falls under "fraudulent deceit." CAL. CIV.CODE § 1709. A claim for concealment arises when one "willfully deceives another with intent to induce him to alter his position to his injury or risk." *Id.* A deceit is defined as the "suppression of a fact, by one who is bound to disclose it, or who gives information or other facts which are likely to mislead for want of communication of that fact." CAL. CIV.CODE § 1710(3). The five elements of a fraudulent deceit claim under California law are: "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Grant v. Aurora Loan Srvs., Inc.*, 736 F.Supp.2d 1257, 1272 (C.D.Cal.2010) (citations omitted).

■■■■ For School District to preclude litigation of the § 523(a)(2)(A) non-dischargeability claim, the elements of § 523(a)(2)(A) must "closely mirror" the elements of the concealment and fraudulent deceit. The elements of a § 523(a)(2)(A) claim are:

... (1) the debtor made a false representation (2) with the purpose and intention of deceiving the creditor; (3) the creditor relied on such false statement; (4) the creditor's reliance on the false

statement was justifiably founded; and (5) the creditor sustained damage as a result of the false statement.

*In re Johannessen*, 76 F.3d 347, 350 (11th Cir.1996) (numbering added).

The factual findings of the California Superior Court with respect to the requisite elements of the concealment or deceit claim closely mirror the elements of § 523(a)(2)(A), and the first requirement for applying issue preclusion is satisfied. Each relevant element addressed in the California Superior Court that relates to the § 523(a)(2)(A)'s nondischargeability claim asserted in this action will be compared below.

The California Superior Court factual findings with respect to concealment or deceit, explicitly identify false representations made by Debtor and the attendant intent. The California Superior Court found that Debtor "intentionally failed to disclose" some important facts and "actively concealed" his receipt of commission payments from Blue Cross. *Judgment*, p. 14. The California Superior Court also found that Debtor "lied" to the School District representative. *Id.* The California Superior Court also made explicit factual findings regarding Debtor's intent, finding that he "intentionally failed to disclose other important facts to [School District], thereby making such disclosure deceptive." *Id.*

With respect to the reliance aspects of the § 523(a)(2)(A) claim, Debtor also asserts that there is not sufficient identity of issues because the requisite reliance element was not an element of the concealment claim. Fraudulent deceit, as applied by the California Superior Court, requires that "the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact," and the Superior Court's

findings addressed this element. The California Superior Court found that the School District "did not know the concealed facts." Although the term "reliance" is not explicitly used in the concealment or deceit elements, the concept and substance of reliance is included—plaintiff would not have acted if he had known the fact. The California Superior Court's findings included a determination that School District did not know and that it "reasonably relied on [Debtor's] deception." *Id.* at 15. For purposes of application of issue preclusion, the elements closely mirror each other. The assessment of whether this amounts to the required justifiable reliance for § 523(a)(2)(A) will be discussed in more detail below.

Lastly, both claims require a damages element. Therefore, the issue of nondischargeability under § 523(a)(2)(A) is sufficiently identical to the tort of concealment litigated in the California Superior Court, and the first requirement to apply collateral estoppel is met.

### 2. The Remaining Requirements of Collateral Estoppel Under California Law Are Satisfied.

The undisputed facts satisfy the remaining four requirements to apply collateral estoppel: actual litigation of the issues; necessary decision of the issue; a decision final and on the merits; and identical parties.

■ The judgment against Debtor for concealment or deceit was actually litigated. In order to establish that an issue was "actually litigated" for collateral estoppel to be applicable, only two requirements need be met: (1) that the issue has been effectively raised in the prior action, either in the pleadings or through development of the evidence and argument at trial or on motion; and (2) that the losing party have had a "fair opportunity procedurally, substantively and evidentially" to contest the

issue. *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush),* 62 F.3d 1319, 1323 (11th Cir.1995). Undisputed facts establish that the issues were effectively raised and that Debtor had a full and fair opportunity to contest the issue. There is no dispute that the parties fully litigated School District's concealment or deceit claims over a 7–year period, culminating in a two-phase trial. Evidence presented at trial included testimony, including that of Debtor, and documentary evidence. The California Superior Court relied on all forms of evidence in its ruling, showing that Debtor had all available tools to defend and contest the claims.

In assessing the third requirement for applying issue preclusion, the Court inquires as to whether elements of this nondischargeability claim were necessary to the adjudication of the concealment or deceit claim. The Court construes Debtor's argument regarding the prior preceding not litigating bankruptcy issues as a challenge to whether § 523(a)(2)(A) issues were necessary to the California Judgment.

■ "Preclusive force [only] attaches to determinations that were necessary to support the court's judgment in the first action. Litigants conversely are not precluded from relitigating an issue if its determination was merely incidental to the judgment in the prior action." *Resolution Trust Corp. v. Keating,* 186 F.3d 1110, 1115 (9th Cir.1999) (citations omitted). Here the identity of the respective required elements demonstrates that the California Superior Court's Judgment necessarily relied upon the factual issues presented in the nondischargeability claims against Debtor in this proceeding. Debtor's conduct and intent, coupled with the School District's knowledge and reliance were essential factual determinations to

impose liability against Debtor. School District's failure to demonstrate any of these elements would have defeated its concealment or deceit claim; therefore, the issues were necessary.

The burden of proof imposed on School District in the California Superior Court and this action is similar, which is a factor to be considered in the necessary element of applying issue preclusion. *In re Bush,* 62 F.3d at 1322. Debtor's incentives to defend the concealment claim were the same as it is to defend the nondischargeability claim. There is no incidental finding that creates concern for the Court. School District has presented sufficient undisputed facts to defeat any challenge Debtor may have to the use of preclusion on this basis.

The parties do not dispute that the decision of the California Superior Court was final and made on the merits. The California Superior Court gave "full consideration" to the evidence submitted by the parties before entering judgment. Complaint, Exhibit A, *Judgment,* p. 12. Furthermore, the decision was finalized and filed on September 29, 2011 by operation of law. *Id.* at 2. Debtor has not appealed the judgment of the California Superior Court. As to the last requirement that the parties in both matters must be identical, Debtor does not dispute that he was a defendant in the California Superior Court litigation. All requirements to apply collateral estoppel are, therefore met.

**B. The Judgment Debt Is Nondischargeable Pursuant Section 523(a)(2)(A).**

 While a bankruptcy court can apply collateral estoppel on issues litigated in a prior action, the bankruptcy court is additionally responsible for determining on the basis of the facts whether the debt is nondischargeable. *In re Lowery,* 440 B.R.

914, 923 (Bankr.N.D.Ga.2010). A central purpose of the Bankruptcy Code is to provide an opportunity for certain debtors to discharge their debts and enjoy a fresh start. *See Grogan v. Garner,* 498 U.S. 279, 284–85, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Quaif v. Johnson,* 4 F.3d 950, 952 (11th Cir.1993). Congress created some exclusions to the general policy of discharging debts. The nondischargeability provision of § 523(a)(2)(A) prevents debtors from obtaining a discharge for debts obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). A creditor must demonstrate that the elements of a § 523(a)(2)(A) claim are met by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. at 286, 111 S.Ct. 654; *In re Johannessen,* 76 F.3d 347, 350 (11th Cir.1996).

 School District has carried its burden of establishing that the undisputed facts satisfy all the required elements of § 523(a)(2)(A). Applying issue preclusion against Debtor and relying upon the factual determinations of the California's Superior Court's ruling in favor of School District, and in consideration of undisputed facts in the record here, entitle School District to a determination that the judgment debt it is owed in nondischargeable. Because the Court concludes that the debt is nondischargeable under § 523(a)(2)(A), it is not necessary to determine whether the debt is also nondischargeable under a claim for willful and malicious injury under § 523(a)(6).

Debtor seemingly contests the factual findings of the California Superior Court. *Debtor's Responsive Brief,* p. 8. Debtor attempts to recharacterize the facts and put facts previously litigated and determined in dispute. The purpose of issue preclusion is designed to address this ex-

act position taken by Debtor. Debtor cannot not put previously adjudicated issues in dispute based on alternative legal theories or disagreements with the factual findings by the California Superior Court. Any dispute regarding another court's judgment can only be resolved by appealing the judgment of such court, not be asserting alternative facts and evidence in a subsequent proceeding. Full faith and credit is given to the prior order as prescribed by law. 28 U.S.C. § 1738.

Based on the undisputed facts each of the following § 523(a)(2)(A) elements have been satisfied by School District. They will be addressed in order: (1) the debtor made a false representation with intent to deceive; (2) reliance on the false representation; (3) the creditor's reliance was justifiable; and (4) resulting damages to the creditor.

### 1. Debtor made false representations with an intent to deceive School District.

■■■ The undisputed facts establish that Debtor made false representations to School District regarding the Blue Cross commissions he was receiving. Misrepresentations do not always require an affirmative statement. Fraud may consist of silence, concealment, or intentional nondisclosure. *SunTrust Bank v. Brandon (In re Brandon)*, 297 B.R. 308, 313 (Bankr. S.D.Ga.2002). Silence or concealment of a material fact can create a false representation under § 523(a)(2)(A). *Id.; see also Citizens & S. Nat'l Bank v. Thomas (In re Thomas)*, 12 B.R. 765, 768 (Bankr.N.D.Ga. 1981). The California Superior Court found that Debtor "disclosed some facts to School District about such commissions, but intentionally failed to disclose other important facts, thereby making such disclosure deceptive." *Judgment,* p. 14. The California Superior Court also found that Debtor "lied to its representatives by re-

vising tables from Blue Cross to hide those commissions." *Id.* The undisputed facts establish that Debtor did not inform Plaintiff of the instruction he issued in the RFPs to include a 5% Medical commission, the subsequent inclusion of the 5% commission in Blue Cross's quotes, and Blue Cross's commission payments to Debtor.

Debtor attempts to create a factual dispute regarding School District's knowledge of the commissions. Debtor submits as an exhibit a October 2000 letter from School District directing payments of all commissions to Debtor. Debtor's opportunity, however, to litigate School District's knowledge in defense of his actions was present in the California Superior Court action. *In re McNallen,* 62 F.3d 619, 625 n. 2 (4th Cir.1995). There, the court explicitly found that School District "did not know the concealed facts." *Judgment,* p. 15.

■■■ To determine whether the misrepresentations were made with an intent to deceive is a subjective issue and a review of the totality of the circumstances is relevant in determining a debtor's intent. *Equitable Bank v. Miller (In re Miller),* 39 F.3d 301, 305 (11th Cir.1994). The California Superior Court made findings as to Debtor's intent and labeled his actions "deceptive." *Judgment,* p. 14.

Debtor also attempts to create factual disputes regarding the impact of his submission of his revised tables to School District. His affidavit includes that it is an industry standard to use one's own forms. *Montgomery Affidavit,* ¶ 24. This statement fails to create a genuine issue of material fact. The undisputed facts remain that Debtor altered the renewal tables to School District to eliminate the commission line item. Debtor also contests that he instructed Blue Cross not to inform School District of the commissions. Again, Blue Cross's actions are not materi-

al in this action and can not defeat School District's motion for summary judgment.

The totality of the circumstances based on the undisputed facts and factual findings of the California Superior Court establish that Debtor made misrepresentations with intent to deceive. Here, Debtor's fraudulent representation was Debtor's intentional non-disclosure.

### 2. Reliance on Debtor's False Representation

The undisputed facts satisfy the reliance element of a § 523(a)(2)(A) claim. The California Superior Court found that School District "reasonably relied" on Debtor's misrepresentation. *Judgment,* p. 15. Further, the undisputed facts establish that School District made its initial decision to change to a self funded plan under Blue Cross based on Debtor's proposal, which did not include the commission line item. Similarly, the undisputed facts establish that School District's renewal decisions were based on Blue Cross proposals altered and submitted by Debtor.

### 3. School District's Reliance was Justified

In *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), the Supreme Court determined that the applicable standard of reliance that a creditor must establish under § 523(a)(2)(A) is justifiable reliance rather than the rigid standard of reasonable reliance. The standard of justifiable reliance requires bankruptcy courts to apply a subjective test to determine whether a creditor justifiably relied on a debtor's misrepresentation. *In re Bucciarelli,* 429 B.R. 372, 376 (Bankr. N.D.Ga.2010). Justifiable reliance is not as exacting a standard as reasonable reliance, which requires consideration of what a reasonable person would do. *Field v. Mans,* 516 U.S. at 70–71, 116 S.Ct. 437.

In this matter, the California Superior Court determined that School District "reasonably relied" on Debtor's false statements. *Judgment,* p. 15. The factual finding that School District did not know of the hidden commission, *id.,* and that totality of circumstances under the undisputed facts establish that School District used Debtor's proposals to make its decision to switch plans and to renew the plans. Debtor does not dispute that School District did not see the Blue Cross commissions paid to Debtor before 2003, and that the altered spreadsheets presented by Debtor did not include commissions.

Debtor does dispute that School District had no knowledge that he received commissions. Debtor supports his argument of the School District's general knowledge of his commissions with the October 2000 letter from School District ("Exhibit D"), which notifies presumably potential insurance carriers that Debtor is its exclusive insurance consultant for group and employee benefits. This letter states that commissions payable be directed to Debtor. *Id.* The Court does not view this letter as raising a dispute of material fact. Further, School District's knowledge of Debtor's retention of Blue Cross commissions was previously litigated and determined in the California Superior Court. The California Superior Court explicitly found School District had no knowledge of the concealed facts. *Judgment,* p. 15.

The question for this Court is whether the undisputed facts viewed in the light most favorable to Debtor establish that School District justifiably relied on Debtor's misrepresentations. A creditor's reliance is typically justified when there is nothing on the face of the representation that it is false or that the creditor does not have actual knowledge of the falsity of the representation. *FCC Nat'l Bank v. Gilmore,* 221 B.R. 864, 874 n. 10 (Bankr.

N.D.Ala.1998). The undisputed facts establish that School District justifiably relied on the information provided by Debtor regarding the Blue Cross plan and premiums because the School District did not know about the commissions at the time they were earned and retained by Debtor.

 Courts have also determined that access to information is a factor for courts to consider when assessing justifiable reliance, yet there is no duty to investigate under the justifiable standard. *In re Brandon*, 297 B.R. 308, 315 (Bankr.S.D.Ga. 2002); *Branton v. Hooks (In re Hooks)*, 238 B.R. 880, 885 (Bankr.S.D.Ga.1999). Debtor's arguments about School District's failure to inquire fail as a matter of law. The factual findings that Debtor's disclosure of some commissions but not the Blue Cross commissions contributed to Debtor's deceptive scheme contribute to a determination, here, that School District justifiably relied on Debtor's misrepresentations.

### 4. Damages Resulted from Debtor's Misrepresentations

The undisputed facts considered in favor of Debtor also establish that damages to School District resulted from Debtor's fraudulent misrepresentation. The California Superior Court found that Plaintiff was harmed by Debtor's misrepresentations. *Judgment*, p. 15. Debtor received over $3,500,000 in commissions from Blue Cross that could have otherwise resulted in lower premium payments to Blue Cross by School District. Debtor's arguments that his recommendation was overall beneficial to School District is true, yet that fact does not provide a exception to the nondischargeability determination under § 523(a)(2)(A).

School District has satisfied its burden and is entitled to a determination that the judgment debt owed by Debtor is nondischargeable under § 523(a)(2)(A).

### C. Identified Funds in Debtor's Scheduled IRA Assets Are Not Property of the Estate Pursuant to 11 U.S.C. § 541(d).

School District's second Motion for summary judgment seeks a determination that certain funds in Debtor's IRA accounts are not property of the estate because these funds were placed in a constructive trust for School District's benefit. For the reasons set forth below, School District is entitled to judgment on this count as a matter of law as well.

 Under § 541(d), "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d). Pursuant to the language of § 541(d), property in which the debtor holds no equitable interest does not become part of the bankruptcy estate. *Clark v. Wetherill (In re Leitner)*, 236 B.R. 420, 424 (Bankr. D.Kan.1999). Where the debtor holds bare legal title to property, the legal title enters the bankruptcy estate subject to the debtor's duty to convey the property to its beneficiary. *Id.* Because the equitable interest in the property is not property of the debtor, the beneficiary's equitable interest does not become property of the estate. *Id.*

 Section 541(d) recognizes the fact that some rights may supersede the rights of the estate. *In re Reider*, 177 B.R. 412, 415–16 (Bankr.D.Me.1994). The law "does not authorize a trustee to distribute other people's property among a bankrupt's creditors." *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 135–36, 83

S.Ct. 232, 9 L.Ed.2d 190 (1962). While many courts are concerned with equality of distribution, the policy of equal distribution is not implicated where a debtor transfers property that would not have been available for distribution to his creditors. *See Begier v. IRS*, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) (citation omitted).

School District asserts that Debtor holds only "bare legal title and not an equitable interest" in $1,266,794 of Debtor's scheduled IRA assets and thus that this sum does not belong to the Debtor's estate. The basis of School District's claim is the California Superior Court's imposition of a constructive trust on Debtor for the sum of $1,266,794.

 A constructive trust is a remedy used by courts of equity "to compel a person who has property to which he or she is not justly entitled to transfer it to the person entitled to it." *Pac. Lumber Co. v. Superior Court*, 226 Cal.App.3d 371, 378, 276 Cal.Rptr. 425 (Cal.Ct.App.1990); *Haskel Eng'g & Supply Co. v. Hartford Accident & Indem. Co.*, 78 Cal.App.3d 371, 375, 378, 144 Cal.Rptr. 189 (Cal.Ct.App. 1978). The party seeking this remedy must show that it is entitled to relief by clear and convincing evidence. *Bank of Alex Brown v. Goldberg (In re Goldberg)*, 158 B.R. 188, 194 (Bankr.E.D.Ca.1993). Constructive trusts exist "to prevent unjust enrichment and to prevent a person from taking advantage of his or her own wrongdoing." *Communist Party v. 522 Valencia*, 35 Cal.App.4th 980, 990, 41 Cal. Rptr.2d 618 (Cal.Ct.App.1995). The Court

concludes that the identified funds in Debtor's IRA assets do not belong to the bankruptcy estate. Rather, this property interest belongs to School District.

### 1. School District Established that the Constructive Trust Requirements Are Met Based on the California Superior Court Final Judgment.

 Constructive trusts "arise out of state law."[5] *Lin v. Ehrle (In re Ehrle)*, 189 B.R. 771, 776 (9th Cir. BAP 1995) (citing *Torres v. Eastlick (In re N. Am. Coin & Currency, Ltd.)*, 767 F.2d 1573, 1575 (9th Cir.1985)). California Civil Code sections 2223 and 2224 address the imposition of constructive trusts. *See id.* Under Civil Code § 2223, "[o]ne who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." CAL. CIV.CODE § 2223. Under Civil Code § 2224, "[o]ne who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." CAL. CIV.CODE § 2224. Three conditions must be met for a California court to impose a constructive trust: "(1) the existence of a *res* (property or some interest in property); (2) the *right* of a complaining party to that res; and (3) some *wrongful* acquisition or detention of the res by another party who is not entitled to it." *Communist Party v. 522 Valencia*, 35 Cal.App.4th at 990, 41 Cal.Rptr.2d 618.

---

**5.** "The Ninth Circuit Court of Appeals has held that the mere fact state law would impose a constructive trust does not end the analysis of whether such a trust should be recognized in bankruptcy." *Mitsui Mfrs. Bank v. Unicom Computer Corp. (In re Unicom Computer Corp.)*, 13 F.3d 321, 325 n. 6 (9th Cir.1994). Yet, most courts have held that a

constructive trust cannot be avoided by a trustee where personal property is in question. *See, e.g., Universal Bonding Ins. Co. v. Gittens & Sprinkle Enters., Inc.*, 960 F.2d 366, 372 n. 2 (3d Cir.1992); *City Nat'l Bank of Miami v. General Coffee Corp. (In re General Coffee Corp.)*, 828 F.2d 699 (11th Cir.1987).

A beneficiary is entitled to a constructive trust only if it can "trace the trust res into its succeeding transfigurements." *Taylor Assocs. v. Diamant (In re Advent Mgmt. Corp.)*, 178 B.R. 480, 488 (9th Cir. BAP 1995) (citing *Heckmann v. Ahmanson*, 168 Cal.App.3d 119, 136, 214 Cal.Rptr. 177 (Cal.Ct.App.1985)). To satisfy this requirement, a creditor must show that the property was "specifically and directly exchanged for the property sought to be recognized as trust property." *Bank of Alex Brown v. Goldberg (In re Goldberg)*, 158 B.R. 188, 196 (Bankr. E.D.Cal.1993). "Commingling trust funds with personal funds generally renders the trust unenforceable against the commingled funds or property acquired from the commingled funds." *Id.* Some courts do not permit the recognition of constructive trusts unless "state law has impressed property with a constructive trust prior to its entry into bankruptcy." *In re Pina*, 363 B.R. 314, 323 (Bankr.D.Mass.2007). For instance, the Ninth Circuit's bankruptcy appellate panel has held that a constructive trust "can only be established by litigation, and the litigation must be successful before the property right is absolute." *In re Advent Mgmt. Corp.*, 178 B.R. at 488.

Here, the California Superior Court imposed a constructive trust in the sum of $1,266,794 against Debtor. *Judgment*, p. 17. The California Superior Court's Final Judgment indicates that the three conditions necessary to impose a constructive trust were satisfied. *Id.* at 15. The court noted that Debtor "argued that commingling defeat[ed] a constructive trust, but cited no authority in that regard." *Id.*

Debtor, again, argues that the constructive trust is not enforceable because of commingling. Debtor also asserts that since Debtor no longer owns the defined benefits plan managed by EH Financial,

and, therefore, any constructive trust was destroyed.

Yet, the undisputed facts, including Debtor's deposition testimony, satisfy the tracing requirement that the total sum of $1,266,794 can be traced from Debtor's deposits of checks from Blue Cross into his accounts, to his pension plan, to the retirement accounts included in Debtor's schedules. Debtor asserts that his deposition testimony also creates factual disputes because there is some ambiguity as to the transfers of these funds.

Debtor's arguments do not create issues of material fact. Debtor's commingling arguments are with respect to the creation of the original constructive trust by the California Superior Court. Such arguments cannot put the Superior Court's imposition of the constructive trust in dispute. School District is entitled to judgment that $1,266,794 is not property of the estate and was placed in constructive trust for School District's benefit. The constructive trust was imposed by operation of law by the California Superior Court. This fact is undisputed and supported by law. *In re Advent Mgmt. Corp.*, 178 B.R. at 488. The purpose of the California Superior Court's imposition of the constructive trust was to protect the rightful owner of ill-received funds. The name of such account holding the identified funds or subsequent transfer of accounts does not destroy the trust under applicable law because the funds are "specifically and directly exchanged for the property sought to be recognized as trust property." *In re Goldberg*, 158 B.R. at 196. School District has presented undisputed facts as to the source of the identified funds in certain IRAs.

Therefore, School District's role as beneficiary to the court-imposed constructive trust results in Debtor holding only bare legal title and School District holding the equitable interest in the identified funds in the IRA accounts currently held by Debt-

or. The identified $1,266,794 in IRA funds are not property of the bankruptcy estate.

## IV. Conclusion

The undisputed facts viewed in favor of Debtor establish that School District is entitled to judgment as a matter of law as to the nondischargeability of the judgment debt and that $1,266,794 of identified funds in Debtor's IRA accounts are not property of the estate. For the reasons stated herein, it is

**ORDERED** that Plaintiff's Motions for Partial Summary Judgment are hereby **GRANTED** as to Counts One and Three.

It is **FURTHER ORDERED** that the debt owed to School District is nondischargeable and that $1,266,794 in identified funds in Debtor's IRA accounts are not property of the estate.

A separate judgment in favor of Santa Ana Unified School District will be entered contemporaneously with this Order.

The Clerk is directed to serve a copy of this Order to the parties on the attached distribution list.